# DONLAN, RESPONDENT, v. THOMPSON FALLS COPPER & MILLING CO. ET AL., APPELLANTS.

## (No. 2,881.)

(Submitted November 14, 1910. Decided November 29, 1910.)

[112 Pac. 445.]

*Default Judgment—Vacation—Discretion—Injunction—Motion to Dissolve—Appearance.*

Injunction—Preliminary Injunction—Effect.
1. The office of a preliminary injunction is to preserve the *status quo* until on final hearing the court may grant full relief.

Appearance—Preliminary Injunction—Motion to Dissolve.
2. A motion to dissolve a temporary injunction is not an appearance in the action.

Judgment by Default—Failure to Answer.
3. Under Revised Codes, section 6719, permitting judgments by default on failure to answer or to challenge the jurisdiction of the court by answer, demurrer, motion, or special appearance, coupled with a motion, within the time specified in the summons, or such further time as may be granted, etc., a mere appearance by the defendant will not prevent the entering of his default.

Same—Pleading—Motion to Vacate Preliminary Injunction.
4. Section 6719, Revised Codes, provides for a default for want of answer, demurrer, motion, or special appearance, coupled with a motion, etc., filed within the time required for answer, and section 7149 declares that after appearance, a defendant, or his attorney, is entitled to notice of all subsequent proceedings of which notice is required to be given. *Held*, that where defendants filed no pleadings except a motion to dissolve a preliminary injunction, until after the time to answer had expired, their default was properly entered without notice, though such motion be regarded as an appearance.

Appeal and Error—Judgment by Default—Vacation—Discretion.
5. Where defendant's default was properly entered, whether it should be set aside was within the sound discretion of the trial court, with the exercise of which the appellate court will not interfere except in case of abuse.

Judgment by Default—Vacation—Mistake — Inadvertence — Surprise or Excusable Neglect.

6. Where defendant's attorney mistakenly determined that there was no necessity for appearing in the main action, until the day set for hearing a motion to dissolve a preliminary injunction, which was subsequent to the expiration of the time to answer fixed by the summons, and no attempt was made to file any pleading in accordance with the mandate of the summons, defendants were not entitled to the vacation of a judgment entered against them by default, on the ground of mistake, inadvertence, surprise, or excusable neglect.

Same—Vacation—Merits.

7. Defendants, in a suit to establish water rights, were not entitled to a vacation of a default judgment, where no answer stating a valid defense was presented, and the affidavit in support of the motion failed to show that defendants had a valid defense on the merits.

Same—Vacation—Answer.

8. While a general denial will suffice in a proper case as an answer, if made within the time required, an answer making a *prima facie* showing of a good defense is essential to the opening of a default.

*Appeal from District Court, Sanders County; Henry L. Myers, Judge.*

SUIT by Edward Donlan against the Thompson Falls Copper & Milling Company and others. From an order denying defendants' motion to vacate and set aside a default judgment, they appeal. Affirmed.

*Messrs. Walsh & Nolan,* and *Mr. H. C. Schultz,* submitted a brief in behalf of Appellants. *Mr. C. B. Nolan* argued the cause orally.

Did the court abuse its discretion in denying the application to have the default set aside? We contend that the notice of motion, with the affidavits, constituted such appearance as would prevent any default. The question now involved presents for consideration subdivision 2 of the Act of 1905 [now section 6719, Revised Codes], and it provides, in broad terms, if an answer, demurrer, motion or special appearance coupled with a motion has been filed with the clerk within the time provided for in the summons no default can be entered. It does not restrict the motion or appearance coupled with the motion to the complaint. It refers in broad terms to the case, so that in this instance, if the motion is directed to the restraining order, it is a motion in the case, and such a motion as would

prevent the entry of default. In the first place, liberality of construction will have to be indulged in. (Revised Codes, sec. 8061.) It is well likewise to bear in mind what a motion is, both as defined by law and as defined by the courts. Section 7139, Revised Codes, provides: "Every direction of the court or judge, made or entered in writing, and not included in a judgment, is denominated an order." An application for an order is a motion. (See, also, *Wallace* v. *Lewis*, 9 Mont. 403, 24 Pac. 22.)

In this case before the time for answering expired a notice of motion was served and filed with the clerk, and attached to this notice, a motion, as we contend, was likewise filed. It is true that the paper referred to as the notice of motion is designated as such, but if the paper in question, regardless of its designation, specifies the character of relief which is invoked, it is nevertheless an application for an order, and answers the requirements of a motion, such as is defined. In the case of motions for new trials, a motion is provided for, yet the court has held that the notice of motion was the proper thing, and that the absence of the motion was not fatal. (*Rutherford* v. *Talent*, 6 Mont. 112, 9 Pac. 886.) If the paper in question contains matter which would make it a motion, the simple fact that it is designated differently would count for nothing. (See *Friel* v. *Kimberly-Mountain G. M. Co.*, 34 Mont. 59, 85 Pac. 734; 14 Ency. of Pl. & Pr., p. 115.)

In 28 Cyc. 6, the author declares the rule to be that the proper grounds of a motion should appear plainly either by notice of motion, or the affidavits accompanying same.

We respectfully submit that the written notice, with the affidavits filed with the clerk, was in effect a motion, and the default could not be entered until it was disposed of.

*Mr. Harry H. Parsons* and *Mr. J. M. Self,* filed a brief in behalf of Respondent, and both argued the cause orally. *Mr. A. S. Ainsworth*, of Counsel.

The notice filed by appellants was simply that they would, at a time long after the time for answering had expired, move

the court to dissolve a preliminary injunction. This notice had no connection whatever with the main subject matter of the action; the injunction may have been dissolved, and the main action still be pending. The object of the notice was limited to the dissolution of the injunction, and this limited object was voluntarily abandoned by the appellants.

Respondents contend that this notice of motion is not such an appearance in an action as to prevent the entry of a default: "A notice of motion is not a motion." (*State* v. *Votaw*, 16 Mont. 308, 40 Pac. 597.) A motion is an application to the court for an order. The court must be moved to grant the order, and when so moved, the proceeding is a motion. (*Peters* v. *Vawter*, 10 Mont. 201, 25 Pac. 438.) A "notice is not a motion, and should not be so treated." (*Herrlich* v. *McDonald*, 80 Cal. 472, 22 Pac. 299.)

Notices must be in writing. (Revised Codes, secs. 7141, 7145.) A motion is an application for an order made *viva voce* to a court or judge. Appellants do not contend such *viva voce* application was made, and the record fails to show it. A motion proper is not in writing, unless authorized by statute. (Id., secs. 7139, 7140; 28 Cyc. 3; *Wallace* v. *Lewis*, 9 Mont. 399, 24 Pac. 22.) Consequently a motion was not made in this action in the lower court as contended by appellants. A motion to dismiss an attachment is not an appearance. (*Belknap* v. *Charlton*, 25 Or. 41, 34 Pac. 758; *Glidden* v. *Packard*, 28 Cal. 650; *Steinbach* v. *Leese*, 27 Cal. 295; *Ripley* v. *Astec Min. Co.*, 6 N. M. 415, 28 Pac. 773.) Neither is a motion to dissolve an injunction. (*Jones* v. *Gould*, 141 Fed. 698; *Chewning* v. *Nichols*, 1 Smedes & M. Ch. (Miss.) 122.) The right to make a motion, *viva voce*, before the court or judge, under this notice was voluntarily abandoned by appellants. The motion was not made; and, it may be, that the court and judge did not even know that such notice was filed in the case. (*Wood* v. *Brush*, 72 Cal. 224, 13 Pac. 627; 28 Cyc. 14, B.)

By an ingenious argument counsel "tacks" the so-called prayer of affiant Wenham, and the "Notice of Motion" to-

gether, and calls the product, "in effect, a motion." This occurs to us indeed far-fetched. In the first place, the prayer is no part of the affidavit. An affidavit is simply "a written declaration, under oath"—in the nature of a statement of facts. (*Reynolds* v. *Fitzpatrick*, 23 Mont. 52, 57 Pac. 452.) This court has decided that the prayer is no part of a complaint or answer in the case (*Donovan* v. *McDevitt*, 36 Mont. 61, 92 Pac. 49; *Leggatt* v. *Palmer*, 39 Mont. 202, 102 Pac. 327) ; and that a prayer is not even necessary to a pleading. (*Pearce* v. *Butte Elec. R. Co.*, 41 Mont. 304, 109 Pac. 275.) So we submit that if the prayer, which is authorized and provided for by statute, is not a part of the pleadings, how can the prayer to an affidavit be any more than surplusage therein? (Revised Codes, sec. 7988.)

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal from an order of the district court of Sanders county, denying the defendants' motion to vacate and set aside a judgment by default.

The action was brought to establish plaintiff's alleged prior right to the use of certain waters of Thompson river; the complaint alleging that defendants have interfered therewith. Both temporary and permanent injunctive relief and general relief were prayed for. The summons was personally served on all of the defendants on August 17, 1909. On the same date a temporary restraining order was issued and served. On September 4, 1909, all of the defendants, by their attorney, served and filed a notice that on September 15, 1909, they would move the court for an order dissolving and vacating the injunction order theretofore granted. This notice was accompanied by the affidavits of the defendants Wenham and Hurlburt. The affidavit of Wenham concludes thus: "Wherefore affiant prays for the vacation and dissolution of said restraining and injunctional order, or for a good and sufficient undertaking therefor, and for such other and further relief as to the court shall seem meet and proper."

On September 8, 1909, the default of the defendants was entered by the clerk, and on September 30, 1909, they gave notice that on October 6, 1909, they would move the judge for an order vacating and setting aside their default and extending the time "for twenty days from the date of the hearing of said application and motion for the defendants, or any of them, to appear and further plead in the above-entitled action." Accompanying the notice was the motion referred to and an affidavit by the attorney. Afterward, presumably on October 6, the motion to set aside the default was denied; on October 11 plaintiff presented proof, and a judgment was entered substantially as prayed for. On October 30, the defendants gave notice of a motion, to be made on November 5, to set aside the default and judgment "and for an order extending the time for twenty days from the hearing of said application and motion for the defendants, or any of them, to appear and answer in the above action." This notice was accompanied by the affidavits of Wenham, Hurlburt, and the attorney. The affidavit of Wenham, who is the vice-president and secretary of the defendant corporation, alleges that, when the summons, complaint, and restraining order were served, they were turned over to the attorney with the request that he take legal measures to dissolve the order; that he agreed to look after the rights of the defendant corporation, which promise defendant relied on, affiant believing that all necessary steps would be taken to obtain a dissolution of the order, and the defendants believing that they had until September 15, 1909, to appear and defend the action on its merits; that on September 15 defendants learned for the first time that default had been taken, and they believed that the motion to dissolve the injunction was such an appearance as would prevent the entry of default; that their failure to enter any other appearance arose entirely from that belief. The affidavit of the attorney is to the effect that he believed his notice of motion to dissolve the temporary restraining order was such an appearance as would prevent a default being taken, and that he so advised his clients. The affidavits show that the Thompson

Falls Copper & Milling Company is the only defendant interested in the result of the litigation. On January 17, 1910, an order was made denying the second motion to set aside the default, and defendants have appealed from the order.

Did the court abuse its discretion in denying the application to set aside the default? It is contended by counsel for the appellants that the notice of motion to vacate the temporary restraining order, together with the affidavits accompanying the same, constituted such appearance as would prevent a default being taken. It certainly is not in accordance with the practice heretofore existing to regard such an appearance, if it be an appearance at all, as having any effect upon the running of the time given the defendant to answer, demur, or make a motion in the main action. The office of a preliminary injunction is merely to preserve the *status quo* until, upon final hearing, the court may grant full relief. It is unnecessary in this case to distinguish between a temporary restraining order and an interlocutory injunction. Both are merely provisional in nature, and do not conclude a right. They are simply incidental to the main issue to be tried. Mr. High, in his work on Injunctions (fourth edition), page 8, says: "It is to be constantly borne in mind that in granting temporary relief by interlocutory injunction, courts of equity in no manner anticipate the ultimate determination of the questions of right involved. They merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue *in statu quo,* until a hearing upon the merits, without expressing, and, indeed, without having the means of forming, a final opinion as to such rights." We are well satisfied that the main action, if we may employ the distinguishing term, and the provisional remedy, are so far different in the respective ends sought to be accomplished, that an actual motion to dissolve the injunction could not be construed as an appearance in the action. As well might it be said that a motion to make the complaint more definite and certain would have the effect of staying the operation of the restraining order. But it is contended that no motion was ever made to dissolve the order. No formal motion was made.

As we have seen, however, the affidavit of Wenham concludes with a prayer that the order be dissolved, or that an additional undertaking be exacted. The method of procedure adopted is, to say the least, novel. But we may treat the affidavit as a motion, and, as already indicated, such holding can avail the defendants nothing.

But let us suppose that the notice of motion, with the accompanying affidavit of Wenham, constituted an appearance in the main action. The result is the same. The summons was served on August 17, and the notice on September 4. On September 7 the defendants were all in default. What warrant was there for believing that they could extend the time to answer, demur, or make a motion, until September 15, by giving notice that they would move to dissolve the restraining order on that date? If they could thus enlarge their time to answer, they could as well extend it until any other date. The mere appearance of a defendant will not prevent his default being entered. Section 6719, Revised Codes, provides that judgment by default may be had, if the defendant fail to answer the complaint or to challenge the jurisdiction of the court, as follows: "2. In actions [other than those arising upon contract for the recovery of money or damages only], if no answer, demurrer, motion or special appearance, coupled with a motion, has been filed with the clerk of the court within the time specified in the summons or such further time as may have been granted, or within twenty days after a motion to quash or set aside the service of summons, or any motion challenging the jurisdiction of the court, has been denied, the clerk must enter the default of the defendant."

This court, in 1904, in the case of *Mantle* v. *Casey*, 31 Mont. 408, 78 Pac. 591, held that under section 1020 of the 1895 Code of Civil Procedure, then in force, a special appearance for the purpose of moving to quash the service of summons did not extend the time for answering to the merits. The Ninth Legislative Assembly (Laws 1905, Chap. 59) thereupon amended paragraph 2 of the section, by adding thereto the words, "demurrer,

motion, or special appearance, coupled with a motion," after the word "answer," where it first appears, and the following after the word "granted," "or within twenty days after a motion to quash or set aside the service of summons, or any motion challenging the jurisdiction of the court." The amended law is now paragraph 2 of section 6719, Revised Codes, *supra.* It will therefore be seen at once that whereas, under the old law, nothing but an answer (or possibly a demurrer) would arrest the running of the time, under the law as amended there are several means of accomplishing that end. The first is by filing an answer or demurrer to the complaint; the second is by a motion filed in the main action, such a motion as will constitute a general appearance; and the third is by special appearance, coupled with a motion. As the complaint and answer present issues of fact, and the demurrer raises an issue of law, so also must the general appearance motion, unless it be merely a request for additional time, in some way attack the complaint. In other words, it must be a motion the granting of which would be inconsistent with the idea that plaintiff was entitled to recover a judgment by default upon the complaint as filed.

It cannot be said that defendants were entitled to notice of application for a default, even though the notice of motion to dissolve the preliminary injunction could be construed as a general appearance in the main action. There was no answer, demurrer, or motion attacking the complaint. Both the summons and complaint remained unassailed and unaffected by the motion actually made. Section 7149, Revised Codes, provides that after appearance a defendant or his attorney is entitled to notice of all subsequent proceedings of which notice is required to be given. The summons notified the defendants that their default would be taken, unless, within twenty days after service, they took steps to prevent it, and they having taken no action to arrest the running of the time, it was unnecessary to again notify them.

We conclude, therefore, that the default of the defendants was properly entered. Whether it should have been set aside was

a matter within the sound legal discretion of the court below, and with its determination we may not interfere, unless there was a manifest abuse of such discretion. Every case must be decided upon its own facts. (*Loeb* v. *Schmith*, 1 Mont. 87; *Donnelly* v. *Clark*, 6 Mont. 135, 9 Pac. 887; *Lowell* v. *Ames*, 6 Mont. 187, 9 Pac. 826; *Whiteside* v. *Logan*, 7 Mont. 373, 17 Pac. 34; *Briscoe* v. *McCaffery*, 8 Mont. 336, 20 Pac. 691; *Thomas* v. *Chambers*, 14 Mont. 423, 36 Pac. 814; *City of Helena* v. *Brule*, 15 Mont. 429, 39 Pac. 456, 852; *Chambers* v. *City of Butte*, 16 Mont. 90, 40 Pac. 71; *Herbst Importing Co.* v. *Hogan*, 16 Mont. 384, 41 Pac. 135; *Blaine* v. *Briscoe*, 16 Mont. 582, 41 Pac. 1002; *Morse* v. *Callantine*, 19 Mont. 87, 47 Pac. 635; *Butte Butchering Co.* v. *Clarke*, 19 Mont. 306, 48 Pac. 303; *Eakins* v. *Kemper*, 21 Mont. 160, 53 Pac. 310; *Collier* v. *Fitzpatrick*, 22 Mont. 553, 57 Pac. 181; *Greene* v. *Montana Brewing Co.*, 32 Mont. 102, 79 Pac. 693; *Jones* v. *Jones*, 37 Mont. 155, 94 Pac. 1056; *Pengelly* v. *Peeler*, 39 Mont. 26, 101 Pac. 147; *Brown* v. *Weinstein*, 40 Mont. 202, 105 Pac. 730.)

The statute provides that the court may relieve a party from a judgment taken against him, through his mistake, inadvertence, surprise, or excusable neglect. There was no mistake, inadvertence, or surprise in the case at bar. The attorney, in the exercise of his professional judgment, determined that there was no necessity for appearing in the main action until the day set for hearing a motion to dissolve the preliminary injunction, twenty-nine days after service of the summons. We are not advised as to why it was thought his clients might then be in default, if they were not so before. No attempt was made to comply with the plain mandate of the summons, the direction therein was wholly disregarded, and the only appearance, if there were any, was in an ancillary proceeding and for the purpose of relieving the defendants of a burden which was immediately affecting them. Mr. Henry Campbell Black, in his article on Judgments, found in 23 Cyc., at page 939, says: "A party cannot be relieved from a judgment taken against him in consequence of the legal ignorance or mistake of his counsel,

whether it concerns the rights or duties of the client, the legal effect of the facts in the case, or the rules of procedure." (See, also, *Scilley* v. *Babcock*, 39 Mont. 536, 104 Pac. 677; *Hancock* v. *Pico*, 40 Cal. 153.) We think the trial court cannot be put in error for refusing to set aside this default judgment.

There is another good and sufficient reason why it should not be interfered with. Nowhere does it appear that the defendants have a meritorious defense to the action. This court, in *Donnelly* v. *Clark, supra,* quoted with approval the language of the supreme court of California, in *Parrott* v. *Den,* 34 Cal. 79, as follows: "Every consideration of expediency and justice is opposed to the opening up of cases in which judgment by default has been entered, unless it be made to appear *prima facie* that the judgment, as it stands, is unjust." This court then continued: "How could it be made to so appear, unless the nature of the defense is disclosed? The defendants do not come with an answer showing a defense, and while this may not be necessary, it is the better practice." These defendants have never tendered an answer, although abundant opportunity to do so has been afforded. Instead, they have twice asked for additional time. The affidavits filed fall far short of disclosing a meritorious defense, or any defense. The plaintiff in his complaint sets forth his claims specifically. He alleges that he is the owner of certain described arid lands; that on June 28, 1909, he appropriated, for use thereon, 7,000 miner's inches of the waters of Thompson river, and he exhibits a copy of his notice of appropriation; he also alleges that he "proceeded diligently to prosecute by excavation and construction the work of creating and building a reservoir, a dam and dam site, ditches, and other necessary aqueducts, by and through which the said amount of water so appropriated shall be stored, conveyed, and used for the irrigation of said lands"; that he has made application to the federal authorities "for the said reservoir, dam and aqueduct rights, together with the right to cut, use and destroy such timber as may be necessary to the completion of the work"; that he has had true surveys and maps made and filed

with the proper authorities of the United States, and has made payment for said sites and rights of way, together with all timber and material necessary to be used or destroyed. He then alleges that his appropriation of water is prior in time and right to any claim of the defendants. We also find this allegation: "That the defendant Thompson Falls Copper & Milling Company, its servants and employees, and each and all of the other defendants herein, their servants and employees, without right or authority, have unlawfully and wrongfully, and against the will and in violation of the orders of plaintiff, gone into and are now in possession of the lands and premises last above described; that they are, and ever since the eleventh day of August, A. D. 1909, have been in possession thereof; that they are digging, excavating and tearing up the said lands and premises, and thereby rendering them unfit and useless to plaintiff in the said uses and purposes aforesaid, in that they are attempting to, threatening to, and unless restrained will, take out, use and divert the waters of said stream or river above the said point of diversion and sites of this plaintiff, and thereby and by means thereof will despoil and ruin and render nugatory all the rights of this plaintiff hereinbefore mentioned and enumerated."

The affidavit of Wenham sets forth that the defendant corporation has a good and meritorious defense to plaintiff's cause of action; that it has property and property rights involved of enormous value; that it is hindered in the operation of its mines and mining properties, of great value, by reason of the judgment; that irreparable loss and injury is being inflicted upon it by virtue of the judgment; that it is the owner of two patented mining claims which are forced to be and remain idle by reason of the judgment; that the mines "are worth and valued, with machinery, appliances, mill, appurtenances, dam, flume and water right accrued thereto," the sum of $895,000 and all thereof are forced into continued idleness, disrepair, decay and loss by reason of the judgment; "that the defendant through and by this affiant asserts, claims, maintains, owns and operates all the legal rights and actual possession of all water and water

rights of and appertaining to the said patented mining claims, meaning and intending thereby to assert, in every way, that the rights of the said Thompson Falls Copper & Milling Company is superior to all and every other right, and that it includes all the water and water rights of and on the Thompson river at the point and place where said company diverts the waters of said river, and that said point and place is above and farther up the stream than the point or place where plaintiff in this action claims water and the right to divert water, and that in this respect this affiant is and will be maintained by the original documents of record in Missoula and Sanders counties.'' In another part of the affidavit we find the statement: ''That at the time of the commencement of this action and the issuance of the injunctional order, the said company was then engaged, and had been for almost thirty days prior thereto, in the work of rebuilding and repairing its dam, flume, and other structures for carrying and conveying water to its mines, concentrator, and mine works on the Thompson river,'' and was in no wise interfering with any rights or alleged rights of the plaintiff.

In his affidavit the attorney alleges that ''he verily believes defendants have a good and meritorious defense to each and every cause of action alleged in plaintiff's complaint''; that ''the defendant Thompson Falls Copper & Milling Company is deprived by said default and judgment from making needed and necessary repairs on its dam, flume, aqueduct, and water appliances for the purpose of beneficial uses of a water right accrued and vested in it; that plaintiff claims a water right to and in the same stream in and to which defendant Thompson Falls Copper & Milling Company has an accrued and vested water right, paramount and superior to plaintiff.''

Included in the judgment are certain findings of fact, one of which is as follows: ''(3) That if the defendants or any of them, or the grantors or predecessors in interest of any of them, ever had a valid and existing water right on said river and the right to the use of any of the waters of said river for any purpose or uses whatsoever, said right has been abandoned and forfeited by

nonuse, failure to do any work upon said water right, and by a course of conduct which shows a clear intent and purpose to abandon said right to any such water as they or any of them might or may have had.''

An analysis of the affidavits filed in behalf of the company discloses that the affiants have industriously refrained from asserting any facts having a tendency to show that the judgment entered is not a just one. The company owns two mining claims ''with machinery, appliances, mill, appurtenances, dam, flume, and water right accrued thereto,'' of enormous value. It asserts, claims, and operates ''all the legal rights and actual possession of all water and water rights of and appertaining to the mining claims,'' meaning thereby to ''assert in every way'' that its rights are superior to all others and include all of the water and water rights on Thompson river ''at the point where it diverts the water,'' which is above the place where plaintiff claims the right of diversion. It does not appear, save by inference, that any of the property of the defendant company had ever been used or operated, except that it is shown by the affidavit of defendant Hurlburt that repairs on the dam, flume, and aqueduct were in active operation at the time of service of the summons, and had been for some weeks prior thereto. Indeed, there is no showing that defendant company is injured by the permanent injunction included in the judgment. It is enjoined from interfering with plaintiff's dam and water right. Its witnesses allege affirmatively that its point of diversion is above that of the plaintiff, and that it has not heretofore interfered with his operations or water rights. Giving the affidavits the most favorable construction, the only claim found therein is that the company requires the water to operate its mill and appurtenances. The water may well be employed for this purpose without interference with plaintiff's rights, so far as the affidavits disclose. After such use it would be the duty of the company to return the water to the stream. We have no means of knowing how far below the mill Donlan's works are situated. In order to move the discretion of the court, defendant should have shown

how and in what manner it is injured, and not have confined its allegations to general statements, which are mere conclusions. It has no water right, unless it can and does employ water for some useful and beneficial purpose. What water right does the defendant company claim? Has it any? The only evidence in the affidavits of such right is found in the bald assertion that it exists and is prior to that of plaintiff. The attorney asserts that he believes that the defendant has a water right, but it does not appear that the facts in the case have ever been stated to him by his clients. Wenham claims a water right and invites the court to examine the records of Missoula and Sanders counties to ascertain whether he is not correct in his assertion.

While a general denial will suffice, in a proper case, for an answer within time, something more is required where it is sought to open a default. Defendant must make *prima facie* showing of a good and valid defense on the merits. This defendant was advised that the district court had found that it had abandoned any water right it may have had. It was advised of the date upon which plaintiff claimed to have initiated his right, and of all particulars appertaining thereto; and it still contented itself with asking for additional time to answer. As was said by this court in *Schaeffer* v. *Gold Cord Min. Co.*, 36 Mont. 410, 93 Pac. 344, and again in *Pearce* v. *Butte Electric Ry. Co.*, 40 Mont. 321, 106 Pac. 563: "A party defendant must support his application by an affidavit of merits setting forth *the facts* constituting his defense, or tender with his motion and affidavit a copy of his proposed answer." (See, also, *Bowen* v. *Webb*, 34 Mont. 61, 85 Pac. 739.)

The order of the district court of Sanders county is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly concurs.

Mr. Justice Holloway, having been absent, did not hear the argument and takes no part in the foregoing decision.