MARLOWE, TRUSTEE, RESPONDENT, *v.* MISSOULA GAS CO., ET AL., DEFENDANTS; DETROIT STOVE WORKS ET AL., APPELLANTS.

(No. 5,281.)

(Submitted September 12, 1923.  Decided October 4, 1923.)

[219 Pac. 1111.]

*Trust Deeds—Foreclosure—Default After Appearance—Notice of Subsequent Proceedings—Real Property—Judgment Lien —Priority—How Lost.*

Default After Appearance—Notice of Subsequent Proceedings on Defaulting Party not Required.
1. Where defendants, judgment creditors, in an action to foreclose a trust deed in which a receiver had been appointed, filed an answer a demurrer to which was sustained, they being given twenty days in which to further answer, declined to plead further and did not appeal from the judgment, they were not entitled to notice of subsequent proceedings had some three months thereafter by way of applications for the authorization of the issuance of receiver's certificates in payment of receiver's and attorney's fees, since a party who permits himself to get into default after general appearance is as effectively out of court, as respects his right to notice of subsequent proceedings, as though he had failed to enter appearance in the first instance.

Real Property—Priority of Judgment Lien—How Lost.
2. In order to preserve the priority obtained by a judgment lien on real property, a sale under execution must be made during the life of such lien, six years from the date of judgment (sec. 6807, Rev. Codes 1907 [sec. 9410, Rev. Codes 1921]), or execution must have been issued and proceedings on judicial sale begun before the lien becomes barred, and to avoid operation of such bar the sale must be proceeded with without any delay greater than is permitted by section 6816, Revised Codes of 1907 (sec. 9419, Rev. Codes 1921), the mere issuance of execution being of no avail.

*Appeal from District Court, Missoula County; Theo. Lentz, Judge.*

ACTION by Thomas N. Marlowe against the Missoula Gas Company and another. Judgment for plaintiff and defendants appeal. Affirmed.

*Messrs. Hall & Pope* and *Mr. Elmer E. Hershey,* for Appellants, submitted a brief; *Mr. Hershey* argued the cause orally.

*Mr. Harry H. Parsons,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was commenced to foreclose a mortgage executed by the defendant Missoula Gas Company as security for its bonded indebtedness. The appointment of a receiver was asked and granted, the plaintiff herein being designated as such receiver. It appears that on July 1, 1909, the Missoula Gas Company executed a mortgage to the American Trust & Savings Bank and Frank H. Jones, both of Chicago, Illinois, as trustees, as security for the payment of the principal and interest of bonds authorized to be issued to the amount of $500,000. Of such bond issue an aggregate of $150,000, dated July 1, 1909, were issued due July 1, 1921. Provision was made in the mortgage for the substitution of trustees, and, those originally named having resigned, the plaintiff was regularly selected and qualified on the —— day of August, 1918, as trustee. The property described in the mortgage consists of both real estate and personalty. The realty and chattels enumerated cover all of the property of the Missoula Gas Company, including, among other things, pipes, mains, service connections, corporate and municipal rights, franchises, goodwill, *etc.* It is alleged by the plaintiff in his complaint that the Missoula Gas Company is a public service corporation, engaged in furnishing the inhabitants of the city of Missoula with gas.

The mortgage was regularly filed for record and recorded in Missoula county, wherein the property mortgaged was located, in December following its date of execution.

The Detroit Stove Works brought suit against the Missoula Gas Company, and on May 15, 1912, caused an attachment therein to be levied upon the defendant's real estate. Later that action was prosecuted to judgment, which was regularly entered for the sum of $7,811.49 on July 14, 1913. Judgment was also entered in favor of Northwestern Gas Equipment Company on July 14, 1913, against the Missoula Gas Company for $469.26, and on the same date like judgment was entered in favor of Charles H. Dickey and Dickey Bros. for $10,054.60. In all three instances the real estate of the judgment debtor was attached of record in advance of the entry of the judgments. All of the appellants herein filed like answers to the plaintiff's complaint, admitting the assertion of liens on the property of the Missoula Gas Company as judgment creditors superior to those of plaintiff. Further answering, it was by each of the appellants alleged: "That said deed of trust or mortgage was not accompanied by the affidavit required by section 5756 of the Revised Codes of Montana, and said deed of trust or mortgage was therefore void as to this defendant, who was and is a creditor of said Missoula Gas Company, and that by reason thereof the judgment of this defendant as herein set forth was and is a prior lien upon said property described in said deed of trust or mortgage."

. Demurrers were interposed to the answers and by the court sustained on February 18, 1920, and the appellants were given twenty days within which to further answer. On May 27, 1920, the Detroit Stove Works, appearing by its counsel, informed the court that it stood on its answer and declined to plead further. On July 10, 1920, the plaintiff, as receiver in the action, moved the court for authority to execute and deliver to Harry H. Parsons, plaintiff's attorney, a receiver's certificate for $1,000, and on October 5, 1920, the court directed the issuance of a receiver's certificate as requested in plaintiff's motion.

Again, on plaintiff's motion, an order was entered on March 21, 1922, authorizing the receiver to issue additional receiver's certificates to the amount of $4,000. The record does not disclose when the plaintiff was appointed or qualified as receiver, nor that notice of the motions for authorization by the court of the issuance of such receiver's certificates were served on the attorneys for appellants. The default of the appellants was entered on November 6, 1922, and the court minutes recite: "Elmer E. Hershey, Esq., attorney and counsel for the defendant, appeared in open court and objected to the foreclosure of said deed of trust and all the proceedings upon the ground that certain receiver's receipts had been issued without notice to said defendant, which objection was then and there by the court overruled."

Thereupon, after hearing all the evidence and proof, the court allowed the receiver, Thomas N. Marlowe, the sum of $10,875.63 as compensation and fees, Harry H. Parsons, as receiver's attorney, the sum of $1,000 as fees, as first liens on said property, and the sum of $7.50 as court costs. The court also ordered judgment on the bonds, including interest, for $260,875, and on the receiver's certificates, including interest, for $38,729.61, and ordered judgment for the total sum of $311,-480.24, and further ordered that the deed of trust be foreclosed. Judgment was entered accordingly. The appeal is from the judgment. Although several specifications are assigned, but two questions are presented determinative of the case, which will be stated and considered in their order.

First. Did the court err in authorizing the issuance of [1] receiver's certificates? The statute (sec. 7149, Rev. Codes 1907 [sec. 9782, Rev. Codes 1921]) provides that a defendant appears in an action when he answers, demurs, or gives the plaintiff notice of his written appearance, or has his appearance entered in open court, and that after appearance the defendant or his attorney is entitled to notice of all subsequent proceedings of which notice is required to be given. It must be conceded that, where no appearance is thus made, no service

or notice of papers in connection with plaintiff's applications to the court need be made. There would be merit in appellants' contention, but they lose sight of the fact that defendants may, after appearance, become as effectually in default as though no appearance at all had ever been made. Their general appearance, once entered, entitling them to notice of subsequent proceedings, does not mean that they are entitled to notice in all events indefinitely, whether they meet the court's orders and requirements or not. When they subsequently permit themselves to get into default, they are as effectually out of court, as respects rights to notice of subsequent proceedings, as though they had failed to enter appearance within the time prescribed in the first instance. The statute providing for notice of proceedings to defendants in the action relates only to those who are actively participating therein. A defendant is in default upon failure to answer or make other appearance within the time specified in the summons, or such further time as has been by the court granted, after which the plaintiff may apply for the relief demanded in the complaint. (Sec. 6719, Rev. Codes 1907 [sec. 9322, Rev. Codes 1921].) Having taken no action to arrest the running of the time, it was unnecessary to give the defendants further notice. (*Donlan* v. *Thompson Falls C. & M. Co.*, 42 Mont. 257, 112 Pac. 445.) Here the defendants were by the court, upon sustaining demurrers to their answers, allowed twenty days within which to file amended answers. They failed and refused to do so, and stood upon their rights under the answers by them filed, refusing to further plead. They were in default twenty days after the court's order, namely, March 10, 1920. The first application to the court for authority to execute and deliver receiver's certificates was not filed until July 10, 1920, eighty-three days after the defendants allowed themselves to get in default. The first order thus complained of was made October 5, 1920, nearly seven months after defendants had defaulted. Defendants' first objection to these orders was made November 6, 1922. The appellants could

have maintained their status in court by answering over and participating in the proceedings, or by appeal from the judgment sustaining the demurrers. But they cannot thus sleep on their rights, effectually surrender them by their own negligence, and then be heard to thus complain.

Second. Did the lapse of six years from the date of the [2] judgment, without action on appellants' part, render the judgments inoperative as a prior lien upon the mortgaged real estate? The statute provides that from the time a judgment is docketed it becomes a lien on all real property of the judgment debtor, and that the lien shall continue for six years, unless previously satisfied. (Sec. 6807, Rev. Codes 1907 [sec. 9410, Rev. Codes 1921].) Real property is attached, as appears to have been done in this case, by filing with the county clerk a copy of the writ, together with a description of the property, and a notice that it is attached. (Sec. 6662, Rev. Codes 1907 [sec. 9262, Rev. Codes 1921].) But the attachment in advance of judgment confers no greater or different right to the property attached after judgment. The lien thereof becomes merged in the judgment. Therefore the effect of the attachments may be eliminated from consideration. The liens in this case, then, were in existence for six years from the date of the judgment entered in appellants' favor against the Missoula Gas Company, *viz.*, from July 14, 1913, to July 14, 1919. Admittedly the appellants took no action within the time prescribed to enforce the liens, and, having permitted them to expire, they cannot now assert preference or other rights under them. Upon expiration of the liens by limitation, they do not exist at all in the eyes of the law.

In our view, the appellants by their own laches have permitted the bar to fall, and in consequence the real estate affected is freed from such judgment liens. This leaves the real estate in the ownership of the Missoula Gas Company, unaffected by these liens, and the receiver in this action is now in possession of the property, as the officer of the court; the judgment creditors being without preference rights on account

of their former judgment liens. This court has never passed upon the effect of the bar of this statute, but the language is plain, and must be applied as we read it. It confers a specific right upon the judgment creditor, and should he fail to avail himself thereof, by levy of execution and sale of the property of the debtor, he will not be heard to complain, any more than one who is deprived of right to enforce a written contract after the lapse of the period of limitation of action thereon. In order to preserve the priority obtained by the lien of a judgment, a sale under execution must be made during the life of such lien, or execution must have been issued and proceedings on judicial sale begun before the lien becomes barred,[1] and to avoid operation of such bar the sale must be proceeded with without any delay greater than is permitted by the statute (sec. 6816, Rev. Codes 1907) relating to sales on execution; otherwise, the mere issuance of the execution will be of no avail in avoidance of the bar of the statute. This statute was adopted from California, and first appears in our statutory laws in the Bannack Statutes, from which it has been carried forward without amendment, and now appears as section 9419 of the Revised Codes of 1921. It has uniformly been held in California that the lien does not exist for a greater period than that fixed by statute, although the duration of the lien is fixed at a period much shorter than that barring action on the judgment itself. (*Isaac* v. *Swift,* 10 Cal. 81, 70 Am. Dec. 698; *Bagley* v. *Ward,* 37 Cal. 122, 99 Am. Dec. 256; *Barroilhet* v. *Hathaway,* 31 Cal. 396, 89 Am. Dec. 193; *Rogers* v. *Druffel,* 46 Cal. 655; *Eby* v. *Foater,* 61 Cal. 287; *Sanders* v. *Russell,* 86 Cal. 121, 21 Am. St. Rep. 26, 24 Pac. 852.)

We find that other states having similar statutory provisions have held to like effect. Our statute (sec. 6444, Rev. Codes 1907; sec. 9028, Rev. Codes 1921) gives right of action on a judgment within ten years; whereas the lien of a judgment is fixed at six years as above cited. California holds that a sale under execution must be had during the life of the lien—*i. e.*, within the six years; but, as above indicated, we believe

that the issuance of an execution before the bar of the statute is sufficient, provided a sale of the property is had without unnecessary delay.

For the reasons stated, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.