STATE EX REL. PUBLIC SERVICE COMMISSION ET AL., RELATORS, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,663.)

(Submitted December 19, 1936.   Decided December 29, 1936.)

[63 Pac. (2d) 1032.]

564

*Mr. Albert H. Angstman,* for Relators, submitted an original and a supplemental brief and argued the cause orally.

*Mr. La Rue Smith, Mr. S. C. Ford* and *Mr. Sam D. Goza, Jr.,* for Respondents, submitted a brief; *Mr. Ford* argued the cause orally.

*Mr. E. G. Toomey, Amicus Curiae,* submitted a brief and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

Petition for writ of supervisory control. October 9, 1935, the Public Service Commission upon its own motion held a hearing at the town of Sweet Grass, Montana, for the purpose of investigating and determining whether the Consumers Gas Company, a Montana corporation that supplied gas to the inhabitants of the towns of Sun Burst, Sweet Grass, and other points in that locality, was charging reasonable rates to its customers, or not. August 31, 1936, an order was made by the commission reducing the rates charged to the inhabitants of the towns of Sun Burst and Sweet Grass. September 18, 1936, the gas company commenced an action in the district court of the first judicial district of the state of Montana, seeking to restrain the commission from putting the new rates into effect or prosecuting the gas company for failure to comply with the commission's order reducing the rates.

The complaint prayed for a restraining order enjoining the commission until the final determination of the action, and that upon final hearing the act of the commission in the premises be adjudged in excess of jurisdiction. Upon filing the complaint in the district court, an order was issued directing the commission to show cause at 10 o'clock A. M., September 29, 1936, why it should not be restrained from enforcing the order complained of. The order to show cause was duly served, and the commission appeared by counsel and objected to the granting of the injunction *pendente lite* or any restraining order, on the ground that such proceeding is expressly prohibited by section 3906, Revised Codes, until final determination of the action. October 6, 1936, the restraining order was issued as prayed for and served November 5, 1936. December 14, 1936, the commission filed its petition here, praying for a writ of supervisory control requiring the district court to appear and show cause why the restraining order should not be set aside and annulled. The writ was issued requiring the district court to appear and show cause at 9:30 o'clock A. M. December 19, 1936, why a writ should not issue requiring that court to annul and set aside the temporary restraining order. The matter came on for hearing on the date fixed; the commission and the district court appeared by counsel, and in addition E. G. Toomey, Esq., appeared and asked permission to argue the matter orally and to file a brief as *amicus curiae*, which request was granted. The gas company moved to quash the writ on the grounds that the petition for the writ of supervisory control does not state facts sufficient to entitle the relators to such writ, or any other writ or relief whatever, and further that it affirmatively appears from the petition for the writ that relators are not entitled to the writ of supervisory control or any other writ. Arguments were heard, briefs were filed, the controversy has been duly considered, and we are of the opinion that the position taken by counsel who appeared as *amicus curiae* is sound, wherein he contends that the court should, of its own motion, dismiss the proceeding. This contention of counsel is based upon the

assumption that the restraining order of the district court was an injunction *pendente lite,* made after notice and hearing —a proceeding under which the commission had a clear right of appeal as provided by section 9731, Revised Codes, and that, such appeal not having been taken or perfected within sixty days from and after the time the order fixing the new rates was issued, the commission had no right to a writ of supervisory control. In seeking the writ of supervisory control, the commission had proceeded on the theory that the order issued by the district court was merely a temporary restraining order, and that, under such an order, no right of appeal existed.

The complaint in this action is accompanied by various exhibits which are attached thereto and made a part thereof. Such exhibits provide a record of the various steps in the proceedings. Exhibit 4 is a copy of the restraining order issued by the district court, which the petitioners here desire to have set aside and annulled. Upon reading such order it is very clear that it is an injunction *pendente lite.* It restrains "the defendant, their agents, representatives, attorneys and employees, * * * and each of them * * * until the final determination" of the action, and from commencing or prosecuting any action or proceeding against the plaintiff for failure to comply with the order of the Public Service Commission of August 31, 1936. The fact that it is referred to as a "temporary restraining order" does not make it so. "Whether an order is a restraining order or a temporary injunction must be determined from its form and substance. The restraint which the order purports to impose and not the name given to it determines its true name and character." (32 C. J. 28.)

In the case of *Labbitt* v. *Bunston,* 80 Mont. 293, 260 Pac. 727, 730, this court said: "The decision in *Maloney* v. *King,* above [25 Mont. 256, 64 Pac. 668], which, on the authority of the Wetzstein opinion [*Wetzstein* v. *Boston & Montana etc. Co.,* 25 Mont. 135, 63 Pac. 1043], held that an appeal does not lie from a temporary restraining order pending the hearing

of an order to show cause why an injunction *pendente lite* should not issue. * * * As injunctive orders, granted without notice, are not appealable, they are vulnerable to a motion to vacate, dissolve, or modify. (Sec. 9250, Rev. Codes 1921; *Butte Consolidated Min. Co.* v. *Frank,* 24 Mont. 506, 62 Pac. 922; *McDermott* v. *American Bonding Co.,* 56 Mont. 1, 179 Pac. 828; *Winnett Pacific Oil Co.* v. *Wilson,* 71 Mont. 250, 229 Pac. 850.) Where the matter is heard upon an order to show cause, the right to a temporary injunction is 'adjudicated' by the decision rendered after the hearing (*Winnett Pacific Oil Co.* v. *Wilson,* above); so here, as the motion to dissolve presented the question of plaintiff's right to the restraining order, and the decision on the motion was equivalent to a decision on the hearing on the order to show cause and rendered such a hearing needless, *the order of September 24th was an 'adjudication' of the plaintiff's right to an injunction pendente lite and an order refusing to dissolve an injunction, from which an appeal lies under section 9731, above."*

We think there is no question that the order issued by the district court was an injunction *pendente lite,* and, being such, was an appealable order. Such being the case, petitioners are not entitled to a writ of supervisory control. (*State ex rel. Meyer* v. *District Court,* 102 Mont. 222, 57 Pac. (2d) 778.) True, there is an exception to this rule which, however, applies only in cases where the remedy by appeal is inadequate, and the commission earnestly contends here that such a situation confronts them in this proceeding, but after careful consideration we think such contention is without merit.

The writ is denied and the proceeding dismissed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS, Dissenting: This is a proceeding brought by the Public Service Commission against the district court for a writ of supervisory control. The service com-

mission, after a hearing, directed the Consumers Gas Company, a utility corporation furnishing natural gas to the towns of Sweet Grass and Sun Burst, to make certain reductions in the price of gas to its consumers.

The provision of the statute of the state pertaining to the rates fixed by the Public Service Commission (sec. 3906, Rev. Codes) reads: "Provided, that all rates fixed by the commission shall be deemed reasonable and just, and shall remain in full force and effect until final determination by the courts having jurisdiction." The Consumers Gas Company, being dissatisfied with the order of the commission, commenced proceedings to set aside the findings and order of the commission; the company's first move was to file a suit in the district court to set aside the order of the commission during the time the proceedings would be pending. The rate order was suspended. by the district court. Judging from past experience, the effect of the court order would extend over a period of several years. It will be observed that this order as granted by the district court was in direct conflict with the above mentioned statute (sec. 3906), wherein it was directly ordered by the legislature that the orders of the commission should become effective and remain in full force and effect during the period of controversy in the courts.

The Constitution of the United States (Fourteenth Amendment) and the State Constitution (Art. III, sec. 27) both provide: "No person shall be deprived of life, liberty, or property without due process of law." If the order of the board fixing rates does not constitute due process of law, then this direction of the legislature was not constitutional. This question has been raised by utility corporation lawyers many times for many years, but still no decisive opinion by the courts of last resort.

This controversy involving the rates of the Consumers Gas Company was taken first to the Federal District Court, and from thence to the United States Supreme Court (*Mountain States Power Co.* v. *Public Service Com.*, 57 Sup. Ct. 168, 81 L. Ed. ——); this latter court held that it would not finally

decide the question until the supreme court of Montana had passed upon the constitutionality of its own constitutional provision, following an established precedent of the federal court in respect to questions arising under statutes of any state. *We are, therefore, squarely up to the question whether the legislature can provide that rates shall remain in effect as made by the Public Service Commission during the pendency of the controversy in the courts.*

The question comes to us as supervisory control under the provisions of our Constitution (Art. VIII, sec. 2), which provides that the supreme court "shall have a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law." This is the broadest power granted by the Constitution to the supreme court for its procedure; particularly since there are no fixed laws or regulations governing the conduct of the supreme court in supervisory control proceedings. The only rules for guidance are the decisions of this court fixing the boundaries within which it will exercise this power. It is properly classified as an "extraordinary remedy." This court has generally held that, as an extraordinary remedy, it will not intervene its authority under this writ wherein other speedy and adequate remedies are afforded. Generally speaking, where the remedy of appeal is available, supervisory control is denied; but the courts recognize exceptions where justice warrants, and the writer of this opinion asserts that the exigencies of this situation applies and warrants an exception. No harm can come. No statute is violated, no bad precedent established. Much good can result.

The board was represented in this case by its regular attorney, Judge Albert Angstman, a former member of this court, and the district court was represented by the attorney for the Consumers Gas Company, Judge S. C. Ford, also a former member of this court. The question was raised in the form of a motion to quash upon the ground that the petition did not state facts sufficient to warrant the granting of a motion to supervise and annul the order of the district court

in setting aside the rates fixed by the board. The question of the right of supervisory control in this instant case was not raised by Judge Ford or Judge Angstman, or argued by either. On the morning the case was argued, Attorney E. G. Toomey appeared, representing that he was acting in the interest of the plaintiff in the case of *Mountain States Power Co.* v. *Public Service Commission,* 57 Sup. Ct. 168, 81 L. Ed. ——, a companion suit recently incompletely decided by the Federal Supreme Court. It was argued by counsel Toomey that in both cases this question of the constitutionality of the Montana statutes as to the right of the board to put in force its new rates during the pendency of an action would have to be determined before the higher court would pass upon the question. Attorney Toomey suggested to this court in his written application to appear as a friend of the court "that this was a matter of great public interest affecting public utility corporations in the state, and the protection afforded public utility property against confiscation under the Fourteenth Amendment and under section 27, Article III of the state Constitution," quoted above. He further recited that the "gravity and importance of the issues involved justify minute and careful inspection of the pertinent record." In view of the importance of this question as suggested by attorney Toomey, this court then granted him permission to argue the case orally before this court and later to file a brief as friend of the court.

Attorneys Angstman and Ford filed extensive and very interesting and exhaustive arguments upon the constitutionality of the law in question, but in their presentation of the question no objection was raised to the supervisory manner in which the constitutional issue was before the court. With their briefs before us we are now able to decide the constitutionality of the question probably as well as the court will ever be, especially in view of the fact that our court calendar is clear and up to date and we now have ample time to study the question thoroughly. However, Mr. Toomey in his oral argument and in his brief devoted nearly all of his time to the presenta-

tion of arguments urging this court to defer action. He argued that the writ of supervisory control was inappropriate and unauthorized at this time because attorney Angstman, for the board, had not appealed from the order of the district court setting aside the rates made by the board and the question could have come to this court by appeal instead of by writ of supervisory control. It further appeared from the argument and supplemental record filed by attorney Toomey in the case after the time set for the hearing herein, that it was then too late for appeal. So, accepting his argument and record as correct, the vital question in issue could not be raised in the federal court until the final determination of this case in this court. If this question came to this court by appeal, the record would not be any shorter, any clearer, or the issue any easier of solution. It therefore becomes important for this court to promptly pass upon the constitutionality of the question. It is apparent that this "friend of the court" is solely interested in defeating any present determination of the vital constitutional question in issue. His argument on this constitutional question would appear to suggest to us that in his opinion the law is constitutional, but it is a well-known fact that his prior argument and the general argument of utility companies is that our present law for immediate enforcement of new board rates is unconstitutional.

If an attorney may inject himself into this court as a friend of the court by permission of the court, representing that it was his purpose to argue an important public question and after thus coming into the case he practically ignores the primary question in issue and instead argues that the court should defer its action and not settle the primary question at all, and if the argument he does present upon the constitutional question is obviously inconsistent with his previous arguments and inconsistent with the interests of his clients, the utility companies, solely for the purpose of encouraging inaction instead of a final determination of the vital public question which he himself said was "of great public interest," his argument is unworthy of consideration.

The real issue beneath the surface of this case is whether the determination of this very important issue may be delayed in our courts for years to come by dilatory tactics of this character. The public has for years desired a settlement of this controversy. Justice Morris wrote the majority opinion of the court in this case. He entirely omitted any mention of the real issue to be determined by this proceeding. He even failed to mention the able counsel who submitted such illustrative briefs upon the issue which attorney Toomey suggested was of such great importance to the public. He devoted his entire time in an attempt to excuse the evasion of this court—the excuse for not promptly determining the real issue so that it might be carried into the Supreme Court of the United States and passed upon there, a decision that would set at rest the rights of all parties in situations of this character. Instead he said, "We are of the opinion that the position taken by counsel who appeared as *'amicus curiae'* is sound, wherein he contends that the court should *of its own motion* dismiss the proceeding."

Consideration should be given by the courts, counsel and the people to the fact that this effort to delay a final determination of the constitutional question here sought to be determined is in bad faith. This delay permits a multitude of lawsuits. This cost of doing business of utility companies is charged to the public as a part of the costs of such utility service, and therefore it appears that this is needlessly prolonged litigation in which the public pays the attorneys for both sides and affords a hidden indirect method of paying utility company lobbyists.

It is of no present avail in view of the majority opinion in this case to review the able arguments of counsel for the respective parties, but it may be opportune for me to suggest that the United States Constitution (Tenth Amendment) declares: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively." *The word "corporation" does not appear in the Federal Constitution; therefore no*

*rights are reserved to utility corporations by it.* Amendment XI reads: ''The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.'' These utility corporations are almost unanimously of foreign incorporation. *They are foreign citizens, if they may be properly designated as citizens at all,* and should be treated as such in the settlement of this case. *The Public Service Commission is an arm of the state and should be treated as such by the federal courts; therefore these utility companies have no authority to be heard in the federal courts against the state.* Second, and of greater importance, is the question whether or not a corporation is a ''person.'' As said in the forepart of this opinion, the constitutionality of the right to make rates become effective during litigation is dependent upon the constitutional provision, ''No *person* shall be deprived of life, liberty, or property without due process of law.'' (Art. III, sec. 27.) Corporations have no rights in the sense used in the Constitution as persons. They have none of the attributes of persons. They have no conscience, no feeling, and no life to suffer. Indeed, they are perpetuate.

Liberty, as understood by the immortal Lincoln, the author of this constitutional phrase, was intended to refer to the downtrodden, particularly to the slaves then just emerging into freedom and in need of protection. Had he foreseen the construction since placed upon his language, he would have thought twice before proposing such a change in the Constitution, which has in practice resulted in protecting the monopolistic dominance of utility corporations of our day.

In view of the fact that the Federal Supreme Court will not consider the case until this court has rendered an opinion, I believe this court should promptly decide the constitutionality of the question, thereby settling for all time all litigation upon the subject.