CENTRAL MONTANA STOCKYARDS, a Corporation, Plain-
tiff and Respondent, v. R. B. FRASER and ROSABELLE
FRASER, Defendants, and E. C. CLARK et al., Defend-
ants and Appellants.

No. 9739.
Submitted April 24, 1957. Decided Dec. 19, 1957.
Rehearing Denied February 17, 1958.
320 Pac. (2d) 981.

170

Howard C. Gee, Lewistown, G. J. Jeffries, Roundup, argued orally for appellants.

DeKalb, Dockery & Symmes, Lewistown; Weymouth Symmes, Billings, and H. Leonard DeKalb, Lewistown, argued orally for respondent.

MR. JUSTICE ADAIR:

This is an appeal from a final judgment entered on a preliminary hearing in an action in interpleader brought by Central Montana Stockyards, a corporation, as plaintiff, against the defendants, R. B. Fraser, Rosabelle Fraser, E. C. Clark, Grace Clark, Evan Owens and Zada Owens.

This is the fifth separately numbered proceeding to be filed in the Supreme Court since April 1954, involving some particular phase or outgrowth of an action at law, district court suit No. 19805, commenced February 18, 1954, by R. B. Fraser and Rosabelle Fraser, his wife, as plaintiffs against the defendants E. C. Clark and Evan Owens. See Fraser v. Clark and Owens, Supreme Court No. 9435, decided July 8, 1954, 128 Mont. 160, 273 Pac. (2d) 105; State ex rel. Clark & Owens v. District Court, Supreme Court No. 9494, decided January 20, 1955, 128 Mont. 526, 278 Pac. (2d) 1000; Fraser v. Clark & Owens, Supreme Court No. 9522, decided April 5, 1955, 129 Mont. 56, 282 Pac. (2d) 459; State ex rel. Fraser v. District Court, Supreme Court No. 9529, decided May 4, 1955, 128 Mont. 625-627, 283 Pac. (2d) 223, and the instant appeal, Supreme Court No. 9739, Central Montana Stockyards v. Fraser.

In the year 1952 E. C. Clark and Evan Owens, owners of a large herd of purebred Hereford cattle then in the State of Nebraska, were desirous of acquiring sufficient suitable lands in the State of Montana to accommodate the needs of their herd which they were anxious to move to Montana.

R. B. Fraser claimed to own certain ranch lands suitable to meet the requirements of Clark and Owens and, after extended negotiations, R. B. Fraser, as seller, and E. C. Clark and Evan Owens, as buyers, entered into three separate instruments in

writing, for the purchase from R. B. Fraser of two fenced and enclosed ranches both situate in Fergus County, Montana and commonly known and designated as: (1) The Home Ranch also called the Moulton Ranch and (2) The North Ranch, which ranches were located about fifteen miles apart and neither of which was described in the writings pertaining to the transaction by either section, township or range numbers.

The three writings pertaining to the purchase all bear date of December 30, 1952, and were: (1) "Receipt and Agreement to Sell and Purchase," (2) "Supplement to Receipt and Agreement to Sell and Buy" and (3) "Contract for Deed." The pertinent parts of the aforesaid three writings appear in Fraser v. Clark & Owens, Supreme Court Appeal No. 9522, 129 Mont. 56, at pages 60-65, 282 Pac. (2d) 459, at pages 461-464.

On February 18, 1954, the seller R. B. Fraser and his wife, Rosabelle Fraser, as plaintiffs, commenced civil suit No. 19805 in the district court for Yellowstone County, Montana, against the purchasers, E. C. Clark and Evan Owens, as defendants, demanding a money judgment of $28,500 with interest as well as interest on a larger sum claimed by R. B. Fraser to be owing to him from Clark and Owens under one or more of the three above mentioned writings.

Upon the commencement of such civil suit No. 19805, R. B. Fraser caused a writ of attachment to issue and be delivered to the sheriff of Fergus County, Montana, who, on February 20, 1954, levied upon, seized and attached virtually all of the personal property of the defendants E. C. Clark and Evan Owens, in Fergus County, including 394 head of cattle plus 186 head of suckling calves.

On the timely motion of Clark and Owens, the Honorable Guy C. Derry, judge presiding in said cause in the district court for Yellowstone County, ordered a change of venue to the district court for Fergus County which order, on appeal to this court, was affirmed. See Fraser v. Clark and Owens, Supreme Court Appeal No. 9435, supra, decided July 8, 1954.

On August 6, 1954, the Honorable Stewart McConochie, the duly elected judge of the district court for Fergus County, before whom the transferred civil action No. 19805 was then pending, on the petition of the defendants E. C. Clark and Evan Owens, made an order releasing from the attachment a part of the Clark and Owens property levied upon, namely: 36 head of dry 2-year old heifers, 11 head of horses and certain enumerated automobiles, trucks, tractors and ranch machinery and equipment. See Fraser v. Clark & Owens, 129 Mont. 56, at page 57, 282 Pac. (2d) 459, at page 460.

On September 21, 1954, R. B. Fraser and Rosabelle Fraser disqualified District Judge McConochie, whereupon the Honorable Victor H. Fall, a judge of the First Judicial District in and for the Counties of Lewis and Clark and Broadwater, was called in and assumed jurisdiction in said cause No. 19805. Following a hearing on the petition of Clark and Owens to dissolve the attachment on the remainder of the attached property, Judge Fall made an order denying the petition and refusing to dissolve the attachment, from which order Clark and Owens appealed to this court as is provided for in R.C.M. 1947, Sec. 93-8003, subd. 2, Sec. 93-8004, subd. 3, and Sec. 93-8005, the appeal being No. 9522, in this court.

On December 6, 1954, and while their said appeal No. 9522 was pending in and undetermined by this court the defendants, E. C. Clark and Evan Owens, sold and delivered to Central Montana Stockyards, a corporation, engaged in business at Lewistown, Montana, 175 head of calves for the agreed sum of $14,390.12 for which the buyer, Central Montana Stockyards, made and issued three sight drafts, drawn by it on the Northwestern Bank of Lewistown, Montana, each dated December 6, 1954, and each payable to the order of E. C. Clark, Grace Clark, Evan Owens and Zada Owens, being sight drafts No. 1565 for $7,195.06, No. 1566 for $3,597.53 and No. 1567 for $3,597.53.

Immediately upon the issuance thereof on December 6, 1954, all three of the sight drafts were seized and attached by the

sheriff of Fergus County *as the property of the defendants,* Clark and Owens, said sheriff assuming to act pursuant to the authority of a writ of attachment issued in said civil action No. 19805, at the instance of R. B. Fraser and Rosabelle Fraser, the plaintiffs therein. The property must belong to the defendants before it is subject to attachment. 3 Bancroft's Code Pleading, page 3045, section 2287, notes 4 and 5.

On April 5, 1955, the supreme court pronounced its opinion, decision and judgment on said appeal No. 9522 adjudging that the attachment of the cattle and other personal property belonging to the defendants E. C. Clark and Evan Owens was wrongful and forthwith dissolving and discharging such attachment upon the merits *in toto.*

Also, on April 5, 1955, remittitur duly issued out of the supreme court, in appeal No. 9522 as ordered, and on April 7, 1955, such remittitur, with a true copy of the supreme court's opinion, decision and judgment thereto appended, was duly filed in the office of the clerk of the district court for Fergus County in cause of action No. 19805.

On April 11, 1955, the sheriff of Fergus County delivered to the defendants, Clark and Owens, the three sight drafts totaling $14,390.12 which said sheriff had seized and withheld from the payees, Clark and Owens, since December 6, 1954. Clark and Owens immediately presented the drafts to Northwestern Bank of Lewistown for payment but the drawee bank declined to honor the drafts and informed Clark and Owens that the drawer, Central Montana Stockyards, had stopped payment on all thereof.

On the following day, April 12, 1955, the drawer, Central Montana Stockyards, as plaintiff, filed in the district court for Fergus County its complaint in interpleader, being district court cause No. 19910, naming as defendants therein, R. B. Fraser, Rosabelle Fraser, E. C. Clark, Grace Clark, Evan Owens and Zada Owens.

On May 2, 1955, the defendants E. C. Clark, Grace Clark, Evan Owens and Zada Owens, by and through their counsel,

appeared in said cause No. 19910 by written motion to strike designated portions of Central Montana Stockyards' complaint in interpleader.

On May 18, 1955, the defendants R. B. Fraser and Rosabelle Fraser, by and through their counsel, appeared in cause No. 19910 by interposing a general demurrer to the plaintiff corporation's complaint in interpleader, which demurrer was overruled on June 10, 1955, at which time the defendants Fraser were granted 20 days within which to answer.

On July 29, 1955, the defendants Fraser, by and through their attorneys, Wood, Cooke, & Moulton, served and filed an answer to the plaintiff corporation's complaint in interpleader.

On October 10, 1955, a hearing was had on the motion of the defendants Clark and Owens to strike designated portions of the plaintiff corporation's complaint in interpleader at the conclusion whereof the district judge, ruling that the motion to strike was in the same category as a demurrer, sustained the motion and allowed the plaintiff corporation 15 days within which to serve and file an amended complaint in interpleader.

On October 28, 1955, the plaintiff, Central Montana Stockyards, served and filed its amended complaint in interpleader to which the defendants, Clark and Owens, promptly and on the same day, October 28, 1955, interposed a motion: (1) To strike such amended complaint, (2) to render judgment dismissing plaintiff's said action with prejudice and (3) for an order directing the clerk of the district court to forthwith pay to the movants, Clark and Owens, the sum and amount so deposited by the stockyards corporation with such clerk.

On December 19, 1955, on praecipe therefor filed by the defendants, Clark and Owens, in said cause No. 19910, the default of the defendants, R. B. Fraser and Rosabelle Fraser, was entered for their failure to answer or otherwise plead to plaintiff's amended complaint in interpleader within the time allowed by law for so doing.

Following the entry of the above default the defendants, R. B. Fraser and Rosabelle Fraser, filed a pleading designated

"Answer to Amended Complaint" the opening paragraph whereof reads: "Come now the defendants R. B. Fraser and Rosabelle Fraser, * * * for themselves alone, and not for the remaining defendants, and, jointly and severally, by and through * * * their attorneys, file this their answer to the amended complaint in the above entitled action, *the time for the filing of the same having been extended by stipulation with counsel for the plaintiff,* and in this connection allege:" (Emphasis supplied.)

Nowhere in the record on this appeal does there appear any stipulation extending the time for the defendants R. B. Fraser and Rosabelle Fraser to answer the original complaint in interpleader filed April 12, 1955, as is represented in the original answer of the Frasers thereto, nor does there appear in the record any stipulation extending the time for said defendants Fraser to answer the amended complaint in interpleader, filed October 28, 1955, as is represented in the answer of the Frasers thereto. Should the alleged stipulations have been merely unfiled friendly top-secret arrangements between the plaintiff corporation and the defendants Fraser or their counsel, they would and do have no binding force or effect upon either the court or the defendants, Clark and Owens who had no notice or knowledge thereof.

The above answer of the defendants Fraser was filed some 52 days after plaintiff's amended complaint was served and filed. No attempt was made by the Frasers to have their default set aside and such default, so duly entered in the trial court almost two years ago, continues to stand of record against the Frasers. See R.C.M. 1947, section 93-3905.

On December 27, 1955, Clark and Owens filed their answer to the amended complaint in interpleader of the plaintiff corporation in which answer Clark and Owens affirmatively pleaded and set up their claim in and to the funds deposited and denied that the Frasers had any right or interest therein.

On February 24, 1956, Judge W. R. Flachsenhar, the district judge presiding, granted the plaintiff corporation's mo-

tion to strike certain allegations of the Clark and Owens answer following which ruling the plaintiff, by reply filed March 9, 1956, denied certain of the allegations of the Clark and Owens answer.

On March 12, 1956, by stipulation, by and between counsel for the respective parties that day entered into, it was agreed that one-half of the moneys deposited in the district court by the plaintiff corporation may be paid to the defendants, Clark and Owens, without prejudice to whatever remedy they may have by reason of the fialure of the plaintiff to pay said three sight drafts on demand at the time they were presented to the Northwestern Bank of Lewistown for payment.

Also on March 12, 1956, Weymouth D. Symmes, Esq., of counsel for plaintiff, filed in said district court action No. 19910 his certain affidavit requesting that said district court issue a permanent injunction restraining the said E. C. Clark, Grace Clark, Evan Owens and Zada Owens from prosecuting a certain separate and independent action filed February 27, 1956, in said district court for Fergus County, by E. C. Clark, Grace Clark, Evan Owens and Zada Owens, as plaintiffs, against Central Montana Stockyards, a corporation, defendant, to recover the fund so deposited in court and withheld from the Clarks and Owens together with interest, counsel fees, costs and punitive damages.

On March 12, 1956, trial was had of said cause No. 19910 before Judge Flachsenhar, sitting without a jury, and on May 11, 1956, judgment was entered for the plaintiff, Central Montana Stockyards, dismissing it from the action, awarding it costs in the sum of $319.15 to be paid out of the fund deposited and decreeing that the defendants, Clark and Owens, be "enjoined and restrained from prosecuting any action against the plaintiff or proceeding further with respect to any action against the plaintiff by reason of any claim any defendant might have to the funds heretofore deposited" in said district court by the plaintiff, and further decreeing that "the defendants R. B. Fraser and Rosabelle Fraser, and the defendants

E. C. Clark, Grace Clark, Evan Owens and Zada Owens, do interplead in this cause and settle their several claims, demands and matters in controversy in this suit between themselves."

From the above decision, order and judgment, so rendered and entered against them, the defendants E. C. Clark, Grace Clark, Evan Owens and Zada Owens, took this appeal which is both timely and proper.

Counsel for the respondent, Central Montana Stockyards, has filed and orally argued before this court various motions.

*Motion to Strike Bill of Exceptions.* Respondent's counsel has interposed a motion to strike from appellant's transcript on appeal the bill of exceptions set forth herein urging that such bill was not prepared, served and filed as required by law.

On July 17, 1956, respondent's counsel and appellants' counsel made and entered into a stipulation in writing, reading:

*"Stipulations for Settlement of Bill of Exceptions*

"It Is Hereby Stipulated by and between counsel for the respective parties that the annexed proposed Bill of Exceptions is a true, complete and correct transcript of the proceedings at the trial of the above entitled cause, including the testimony of all witnesses and the rulings of the Court thereon, and includes copies of all pleadings in said matter, and that the same be settled and allowed by the Judge who tried the above entitled action as a full, true and correct Bill of Exceptions.

"Dated this 17th day of July, 1956.

"DeKalb, Dockery & Symmes

By Weymouth D. Symmes

Attorneys for Plaintiff

G. J. Jeffries and Howard C. Gee

By Howard C. Gee

Attorneys for Defendants

E. C. Clark, Grace Clark, Evan Owens and Zada Owens"

178

On July 20, 1956, Judge W. R. Flachsenhar, the judge who tried the action, acting upon and pursuant to the aforesaid stipulation of counsel, settled and allowed the proposed bill, submitted to him as a true, complete and correct bill of exceptions, ordered it filed as such and signed and affixed thereto his certificate which, so far as here pertinent, reads:

"Judge's Certificate

State of Montana, }
> ss.
County of Rosebud. }

"I, W. R. Flachsenhar, * * * the Judge who presided * * * on the trial of the * * * cause; and *counsel for the respective parties having stipulated that the annexed is a true, complete and correct copy of the transcript of the proceedings occurring at the trial of the above entitled cause, and containing all of the testimony received on the trial of said cause, and including all pleadings in said cause;*

"Now, Therefore It Is Ordered, that the same be, and the same hereby is settled and allowed as a true, complete and correct Bill of Exceptions of the proceedings occurring at the trial of the above entitled cause and including all pleadings in said cause, and Ordered filed as such.

"Dated this 20th day of July, 1956

"W. R. Flachsenhar

District Judge Presiding."

(Emphasis supplied.)

Any valid reason or cause showing why counsel for the respondent, Central Montana Stockyards, should be relieved from their above signed stipulation and commitment, on which the trial judge relied and acted, should have been first submitted to the trial judge before applying to the supreme court for relief. Such procedure was not followed.

Respondent's counsel did not request the trial court to relieve them of their commitment and they have not shown this court that they did not know what they were about when they made and executed the written stipulation, which induced Judge

W. R. Flachsenhar to settle and allow the bill of exceptions, which they here seek to have stricken.

In the view we take of this appeal, we deem it unnecessary to say more than that it ill becomes a voluntary signer of the compact to attempt to nullify it.

*Motion to Dismiss Appeal.* Next respondent has moved to dismiss the appeal on the ground that the appeal is from neither a final judgment nor an appealable order.

The decree and judgment herein adjudges, orders and grants an injunction. That an appeal lies from such judgment and order is beyond question. See R.C.M. 1947, Sec. 93-8003, subd. 2, and section 93-4701; Thrasher v. Hodge, 86 Mont. 218, 283 Pac. 219; State ex rel. Public Service Commission v. District Court, 103 Mont. 563, 63 Pac. (2d) 1032; State ex rel. Meyer v. District Court, 102 Mont. 222, 57 Pac. (2d) 778.

The judgment herein dismissed the plaintiff, Central Montana Stockyards, from the action; it awarded the plaintiff corporation its costs; it enjoined the defendants Clark and Owens from prosecuting any action against the plaintiff corporation involving the fund deposited with the clerk of court and it ordered the defendants to interplead in the action so instituted by Central Montana Stockyards. The judgment rendered and entered is one from which an appeal lies under our codes and particularly under R.C.M. 1947, section 93-8003. Respondent's motion to dismiss the appeal on the ground that the judgment herein is not appealable is denied.

Respondent also moved to dismiss the appeal on the ground that the notice of appeal was not served upon the defendants Fraser or their attorneys.

The respondent, Central Montana Stockyards, brought this action in interpleader. It obtained a judgment that assumes to discharge it from liability and to dismiss it from the proceedings after depositing the sum called for by the sight drafts with the clerk of the trial court. Thus did the respondent corporation obtain all the relief asked for in its complaint initiating the action. As between the defendants Clark and Owens

and the defendants Fraser, the district court was wholly without power or authority, in this action in interpleader, to make a valid determination of their right, title or interest in or to the fund so deposited by the plaintiff corporation.

R.C.M. 1947, section 93-8005, provides for the serving of the notice of appeal "on the *adverse party*, or his attorney" and an "adverse party," within the meaning of the statute, is a party who has an interest in opposition to the object sought to be accomplished by the appeal, or a party whose rights may be adversely affected by the reversal or modification of the judgment.

The Frasers are not "adverse parties" within the meaning of the above statute. Their default was duly entered in the trial court for their failure to answer the amended complaint in interpleader within the time allowed by law. Such default remains of record in the trial court and no attempt was made to vacate or set it aside. There was no compliance whatever with the provisions of R.C.M. 1947, section 93-3905.

"The entry of his default terminates his right to participate in the litigation in the absence of fraud; and he may not until such default is set aside in a proper proceeding, file pleadings, move for a new trial, or demand notice of subsequent proceedings." 3 Bancroft, Ten-year Supp. section 1803, pages 2293, 2294. Compare Marlowe v. Missoula Gas Co., 68 Mont. 372, 376, 219 Pac. 1111.

"Moreover, one in default must not let the grass grow under his feet. Whenever apprised of the fact or facts, he must move with all reasonable expedition." Middle States Oil Corp. v. Tanner-Jones Drilling Co., 73 Mont. 180, 186, 235 Pac. 770, 772.

"A defendant against whom a default is entered is not an adverse party to an appeal from a judgment against other defendants, which cannot affect his interests. Fearon v. Fodera, [supra] 169 Cal. 370, 148 Pac. 200, Ann. Cas. 1916 D, 312. A default suffered on the part of a defendant is an admission and a reversal would not do away with such default, and as long as it stands any judgment rendered on appeal would not

affect the judgment against such refaulting defendant.'' Mac-Donald v. Superior Court, 101 Cal. App. 423, 281 Pac. 672, 673. See also Randall v. Hunter, 69 Cal. 80, 10 Pac. 130; Mc-Keany v. Black, 114 Cal. xvi, 46 Pac. 381; Kenney v. Parks, 120 Cal. 22, 52 Pac. 40; 3 Am. Jur., Appeal & Error, section 465, page 163; 88 A.L.R. at pages 428 to 437.

We hold that the Frasers were not ''adverse parties'' upon whom notice of appeal was required to be served, and the motion of Central Montana Stockyards to dismiss the appeal is denied.

*Supreme Court's Judgment.* The decision and judgment so pronounced by this court in appeal No. 9522, in part, states:

''The contract involved in the instant case provides that when the abstract of title is furnished by the vendors and approved by the vendees, that such abstract shall be returned to the vendors forthwith, and that thereupon the vendors shall deposit with said Security Trust and Savings Bank, in escrow for the purpose of such contract, a deed that shall be legally sufficient to vest in the vendees a merchantable title to the property agreed to be sold, together with said abstract of title, 'with instructions to said bank to deliver the said deed and abstract to the vendees upon complete performance of all the obligations of the vendees under this contract; and that otherwise, the said deed and abstract shall be returned to the vendors for cancellation.'

''Paragraph 10, supra, of the contract further provides that upon failure of the vendees to make any of the payments required of principal or interest, taxes or insurance premiums, that the contract, at the option of the vendors shall immediately become null and void of no force or effect whatever, and the vendors shall immediately be and become entitled to the possession of the property.

''Such provisions of the contract clearly provided a remedy for and security to the vendors for a breach thereof and under the provisions of R.C.M. 1947, section 93-4301, precluded a rightful attachment and seizure of *defendants' personal prop-*

*erty* in an action upon the contract upon which this suit was brought.

"In accord with the above cited authorities we hold that the contract sued upon was not one for the direct payment of money and that the payments due under such contract were secured by the provisions of the contract. The order of the district court denying defendants' motion to dissolve and discharge the attachment is set aside and reversed, the attachment is hereby dissolved and discharged and the cause remanded to the district court for further proceedings not inconsistent herewith. Remittitur will issue forthwith." (Emphasis supplied.) Fraser v. Clark & Owens, No. 9522, 129 Mont. 56, at pages 71, 72, 282 Pac. (2d) 459, at pages 467, 468.

It appears that the sheriff of Fergus County was promptly advised of the supreme court's opinion, order and judgment immediately and definitely discharging, vacating and dissolving the attachment, and also of the filing, on April 7, 1955, in the district court in cause No. 19805, of the supreme court's remittitur.

It further appears that on April 8, 1955, Clark and Owens made specific demand upon said sheriff for the delivery to them of the three sight drafts all of which the sheriff then and there refused to surrender.

"The object of it [an attachment] is to secure a lien upon *the defendant's property* to secure the payment of any judgment which the plaintiff may recover in the main suit against him. It is merely auxiliary to the main action to secure *property of the defendant* to be applied in satisfaction of the judgment of the plaintiff, providing he shall be able to establish his claim." (Emphasis supplied.) 1 Shinn on Attachment and Garnishment, section 3, page 4. Compare Short v. Karnop, 84 Mont. 276, 280, 275 page 278.

R.C.M. 1947, section 93-4301, provides: "The plaintiff, at the time of issuing the summons, or at any time afterward, may have *the property of the defendant* attached, as security for the

satisfaction of any judgment that may be recovered * * *.''
(Emphasis supplied.) :

It is well settled in this jurisdiction and elsewhere gener-
ally, that the attachment of one person's property to sat-
isfy a claim against another is a conversion of the property.
Englehart v. Sage, 73 Mont. 139, 143, 235 Pac. 767, 40 A.L.R.
590.

Continuously from February 1954, when they commenced
their original suit No. 19805, until subsequent to April 5, 1955,
when this court dissolved their attachment the Frasers repre-
sented, both to the district court and to this court, that the
cattle and other personal property attached was *the property
of the defendants* E. C. Clark and Evan Owens and there is
no evidence that at any time prior to the pronouncement of the
supreme court's opinion and judgment of April 5, 1955, that
the Frasers made any representation or claim to the plaintiff,
Central Montana Stockyards, that they, the Frasers, were the
owners of the cattle, or of the calves or of the proceeds from
the sale of the calves made on December 6, 1954.

*After* the determination by this court of appeal No. 9522 and
the issuing of remittitur theron on April 5, 1955, Sterling M.
Wood, of counsel for R. B. Fraser and Rosabelle Fraser, aban-
doned his theory and representations that the cavles sold and
the sight drafts issued therefor were the property of the Clarks
and the Owens and by letter bearing date of April 11, 1955,
attorney Woods, wrote the president of Central Montana Stock-
yards, to this effect: ''You have been advised heretofore, and
I am now so advising you again, that Mr. and Mrs. Fraser
* * * own and are entitled to the gross proceeds of a sale
made to you recently* by Messrs. Clark and Owens of one-half
of their 1954 heifer and steer calf increase. *These proceeds do
not belong to Messrs. Clark and Owens but are the property of
Mr. and Mrs. Fraser.* Unless, therefore, you stop payment of
these proceeds to Messrs Clark and Owens and make payment
thereof to Mr. and Mrs. Fraser, your company will be held

184

liable for the same; and demand for such payment to the Frasers is now made. * * *.'' (Emphasis supplied.)

It was not until April 11, 1955, that the sheriff of Fergus County unhanded his hold on the three sight drafts and delivered them to the defendants, Clark and Owens, who immediately presented same to Northwestern Bank of Lewistown for payment, but, all to no avail, for the bank declined to honor the drafts and informed Clark and Owens that the drawer, Central Montana Stockyards, had stopped payment on all thereof.

On the following day, April 12, 1955, the drawer, Central Montana Stockyards, as plaintiff, through its attorneys, filed in the district court for Fergus County its complaint in interpleader, being cause No. 19910, naming as defendants R. B. Fraser, Rosabelle Fraser and E. C. Clark, Grace Clark, Evan Owens and Zada Owens. The complaint sets forth nine seperately numbered paragraphs. Paragraphs V to VIII, inclusive, and the prayer for relief are as follows:

"V. That said sight drafts referred to above were attached by the sheriff of Fergus County, Montana pursuant to a Writ of Attachment duly and regularly issued by this court and remained in the possession of the Sheriff of Fergus County, Montana until on or about April 11, 1955. When pursuant to an Order of the Supreme Court of the State of Montana, said Writ of Attachment was vacated and set aside and on said date the Sheriff duly delivered said drafts to E. C. and Grace Clark and Evan and Zada Owens.

"VI. That said sight drafts were made in full payment of certain livestock standing in the name of the payees and the owner or owners of said livestock are entitled to the moneys specified in said sight drafts.

"VII. That on or about April 11, 1955, Defendants R. B. Fraser and Rosabelle Fraser, through their attorneys, Wood, Cooke and Moulton of Billings, Montana, wrote to the Plaintiff informing the Plaintiff that the said R. B. Fraser and Rosabelle Fraser were the owners of one-half of the livestock for which the above described sight drafts were issued and that said

R. B. Fraser and Rosabelle Fraser were entitled to the proceeds represented by the above-described sight drafts and that if the Plaintiff caused these sight drafts to be paid to the Defendants, E. C. and Grace Clark and Evan and Zada Owens, that the said R. B. Fraser and Rosabelle Fraser would hold the Plaintiff responsible therefor and that this Plaintiff would be held liable for the payment.

"VIII. That the Plaintiff cannot safely pay the same to either of the claimants of said funds named as Defendants in this action without adjudication of the rights of the Defendants between themselves and that this Plaintiff has been obliged to employ attorneys for that purpose and that the Defendants, E. C. and Grace Clark and Evan and Zada Owens have presented said drafts for payment to the Northwestern Bank of Lewistown, Montana.

 \* \* \* \* \* \*

"Wherefore the plaintiff respectfully prays:

"1. That the Plaintiff, the Central Montana Stockyards, be discharged from liability to all or any of the conflicting claims and that an Order of Substitution be made and that the claims of the respective Defendants be determined.

"2. That the Plaintiff be absolved and adjudged free from all costs and liability in this case together with reasonable attorneys fees and for such other and separate releases as to the Court may seem just in the premise.

"3. That upon the payment of said drafts to the claimant or claimants entitled thereto by the Clerk of this Court, that the three sight drafts referred to above be delivered up to the Clerk of this Court and cancelled by him."

In paragraph IX of its complaint the plaintiff, Central Montana Stockyards, alleged that, "simultaneous with the filing" of its complaint it has deposited with the clerk of the district court an amount equal to the total sum of the three sight drafts "in full payment" of the drafts, but the record shows that it was not until April 13, 1955, being the day following the filing of its complaint, that District Judge Stewart McConochie, on

the ex parte application of the plaintiff, Central Montana Stock-yards, made and filed an order that said plaintiff deposit with the clerk of said court "the total sum of $14,390.12 to be held * * * *until the rights of the conflicting claimant defendants are duly adjudicated."*

The Supreme Court of the State of Montana had already determined and adjudicated the rights of the claimants R. B. Fraser and Rosabelle Fraser on the one hand, and those of the claimants Clark and Owens on the other, when, on April 5, 1955, one week before the filing of plaintiff's complaint in interpleader, the court pronounced its opinion, decision and judgment on said appeal No. 9522 wherein it adjudged that the order of the district court, denying the motion of Clark and Owens to dissolve and discharge the attachment on their cattle and other personal property, is "set aside and reversed" and "the attachment is * * * dissolved and discharged."

This was and is a plain unqualified reversal. To reverse a judgment or order means to overthrow it by a contrary decision, to make it void. When a judgment or order is reversed it is as if never rendered or made. Raun v. Reynolds, 18 Cal. 275, 276, at page 290.

Where pursuant to the supreme court's mandate of April 5, 1955, its judgment was filed and entered in the district court for Fergus County in cause of action No. 19805 such judgment remained and continued to be the judgment of the Supreme Court and by that judgment the questions which did actually arise on the hearing in the district court and those which could have been there presented, as well as the rights of the parties litigant, i. e. the rights and claims of the Frasers and the Clarks and Owens, in and to the attached property were fully considered, determined and adjudged and became and are *res judicata.* Kimpton v. Jubilee Placer Mining Co., 22 Mont. 107, at page 109, 55 Pac. 918, at page 919.

In Columbia Mining Co. v. Holter, 1 Mont. 429, at page 432, the Supreme Court, in speaking of a remittitur and mandate regularly and properly issued, said:

"The mandate was the imperative command of a supervisory to a subordinate court.

"The court below was powerless to disobey.

"Disobedience would have been error, and, if admitted, the authority of this tribunal as a supreme and supervisory court would be annihilated."

In 2 Freeman on Judgments, 5th Ed. section 639, at pages 1345, 1346, it is said: "The judgments of appellate courts are as conclusive as those of any other court. They not only establish facts, but also settle the law, so that the law as decided upon any appeal must be applied to all the subsequent stages of the cause, and they are res judicata in other cases as to every matter adjudicated." See In re Smith's Estate, 60 Mont. 276, 199 Pac. 696, and Brennan v. Jones, 101 Mont. 550, 55 Pac. (2d) 697, 700.

In Anderson v. Border, 87 Mont. 4, at page 8, 285 Pac. 174, 176, Chief Justice Callaway, speaking for this court, said: "The greater portion of appellant's exhaustive brief is devoted to an attempt to demonstrate that our former opinion in this case is erroneous, but the short answer is that as to all points which were directly involved in, and were passed upon, in the former appeal, and which are involved in this case, whether the opinion is right or wrong, it is the law of the case, was binding upon the trial court, and is binding upon us." See also: Apple v. Edwards, 123 Mont. 135, 139, 211 Pac. (2d) 138; Ivins v. Hardy, 123 Mont. 513, 516, 217 Pac. (2d) 204; Lake v. Emigh, 121 Mont. 87, 91, 190 Pac. (2d) 550; Carlson v. Northern Pac. Ry. Co., 86 Mont. 78, 281 Pac. 913, 914; Neary v. Northern Pac. Ry. Co., 41 Mont. 480, 110 Pac. 226, 235; Finlen v. Heinze, 32 Mont. 354, 366, 80 Pac. 918.

As authority for the bringing of its suit in interpleader the plaintiff, Central Montana Stockyards, relies upon R.C.M. 1947, section 93-2825, which provides: "A defendant, against whom an action is pending upon a contract, or for specific personal property, may, at any time before answer, upon affidavit that a person not a party to the action makes against him, and with-

out any collusion with him, a demand upon such contract, or for such property, upon notice to such person and the adverse party, apply to the court for an order to substitute such person in his place, and discharge him from liability to either party, on his depositiong in court the amount claimed on the contract, or delivering the property, or its value, to such person as the court may direct; and the court may, in its discretion, make the order. And whenever conflicting claims are or may be made upon a person for or relating to personal property, or the performance of an obligation, or any portion thereof, such person may bring an action against the conflicting claimants to compel them to interplead and litigate their several claims among themselves. The order of substitution may be made, and the action of interpleader may be maintained, and the applicant or plaintiff be discharged from liability to all or any of the conflicting claimants, although their titles or claims have not a common origin, or are not identical, but are adverse to and independent of one another.''

In construing the above-quoted section (93-2825) of the Code, in Security State Bank of Roy v. Melchert, 67 Mont. 535, 540, 216 Pac. 340, 342, this court said: ''This section covers two distinct classes of cases: '(1) If A. sues B. respecting a fund which C. also claims, B. may have C. substituted as defendant and himself relieved from liability. When the order of substitution is made, the action proceeds according to the course of common-law practice. (2) If A. and C. assert hostile claims to a fund in the hands of B. but neither commences an action, B., to relieve himself from liability, may commence a suit in interpleader naming A. and C. as defendants, deposit the fund in court, and be discharged. Because B. has no interest in the fund, and because neither A. nor C. has infringed his rights, he cannot state a cause of action at law against either or both, but may invoke the aid of equity.' Missoula Trust & Savings Bank v. Inman & Son, 50 Mont. 355, 146 Pac. 941.''

The instant suit in interpleader was attempted to be brought under the provisions of the statute applicable to and governing

the second class of cases above-mentioned. This involves two separate contests and determinations. The first determination to be made is as to plaintiff's right to bring the suit and to compel the defendants to interplead. If this first determination be made in favor of the plaintiff instituting the suit then the second matter presented is the contest and litigation between the contending claimants for the fund or property involved. 6 Bancroft's Code Practice and Remedies, Interpleader, section 4878, page 6421.

In State ex rel. State Bank of Townsend v. District Court, 94 Mont. 551, 558, 559, 25 Pac. (2d) 396, 399, this court said:

"We believe that the demurrers as filed to the original petition in interpleader were good, in that the original petition and the affidavit in support thereof stated only that C. N. Burgess laid claim to the funds in question. There must be something further than this, as the mere assertion of a claim by another, without alleging something of the nature of the claim to show that there is some basis for it, even though the claimant may not ultimately succeed in establishing his right to the funds, is but a conclusion. Furthermore, if the nature of the claim and character thereof are not established, it may be possible that the party requesting the interpleader has incurred an independent liability to the claimant, and is not in the position of a mere stakeholder. [Citing authorities.]

\* \* \* \* \* \*

"In [passing upon the sufficiency of] a petition for an order of interpleader, where the court is asked to allow the petitioner to pay the money into court and be discharged from further liability, it is most important to determine the position of the petitioner as a stakeholder before the petition is granted. The right granted under the statutes dealing with the interpleader is not to protect from or against a double liability, but assumes to give protection only against double vexation in regard to one liability.

"We have been cited to many cases dealing with the liability of banks on cashiers' checks, and on certified checks. The gen-

eral broad statement is made that cashiers' checks and certified checks are not subject to stop payment orders. It is further stated that the liability of a bank on a cashier's check is the same as on a certified check, and that the same power to stop payment does not exist as in the case of ordinary checks. All of these statements, as general statements of the law, are correct, and the application of such principles in the cases cited is undoubtedly correct. * * * In the hands of a bona fide holder, the bank has but one duty, and that is to pay, and the cases are unanimous on this point, even those which hold that a bank may refuse payment under certain circumstances.''

The rule is that the petition or affidavit in interpleader must ▮▮▮ disclose some reasonable basis of conflicting claims to the fund or property. Goodstein v. Contower Realty Corp., Sup. 53 N.Y.S. (2d) 350; Flanagan v. O'Dwyer, Sup., 86 N.Y.S. (2d) 559; Hancock Oil Co. of California v. Hopkins, Cal. App., 130 Pac. (2d) 490, affirmed 24 Cal. (2d) 497, 150 Pac. (2d) 463; Rosen v. Equitable Life Assurance Society, 263 App. Div. 1015, 33 N.Y.S. (2d) 910, reversed on other grounds 289 N.Y. 333, 45 N.E. (2d) 899; McNamara v. Knights of Columbus, 206 App. Div. 364, 365, 201 N.Y.S. 235; London Assurance v. Bigeleisen, 135 N.J. Eq. 564, 39 A. (2d) 494, 496; Varian v. Berrien, 42 N.J. Eq. 1, 10 A. 875; Harden v. Barabee, 238 Ala. 519, 192 So. 268; United Fuel Gas Co. v. Caldwell, 109 W. Va. 85, 153 S.E. 107; Matlack v. Kline, 280 Mo. 139, 216 S.W. 323; Meredith v. Meredith, 235 Mo. App. 1010, 148 S.W. (2d) 611; 33 C. J. Interpleader, section 16, page 431; 48 C.J.S. Interpleader section 14.

In its amended complaint of October 28, 1955, the plaintiff, Central Montana Stockyards, in setting forth the claim of the defendants Fraser, herein, alleged, in part:

''That * * * plaintiff was called upon by defendant R. B. Fraser *who made demand upon plaintiff that he was the owner of certain of the said livestock* and if plaintiff paid said drafts to the defendants therein, E. C. Clark, Grace Clark, Evan Owens and Zada Owens, he would bring suit against plaintiff

for the value of the interest he had in the livestock for which the drafts were issued, and threatened plaintiff that if it paid said drafts, it would do so at its own peril. In addition thereto, plaintiff received a letter from Wood, Cooke & Moulton, * * stating in unmistakable terms that they represented R. B. Fraser, and demanding the withholding of payment of said drafts, or the plaintiff would be held liable by defendant Fraser for all damages he sustained." (Emphasis supplied.)

The amended complaint also alleged that on or about December 6, 1954, the plaintiff stockyards corporation duly and regularly made its three separate sight drafts on the Northwestern Bank of Lewistown payable to the order of "E. C. and Grace Clark and Evan and Zada Owens" and it further alleged:

"VI. The said sight drafts were made in full payment of certain livestock *standing in the name of the payees and the owner or owners of said livestock are entitled to the moneys specified in said sight drafts.* * * *

"VIII. That this plaintiff has no interest in this controversy, except to relieve itself of liability; and is not taking sides in the controversy. Plaintiff has not colluded with either of said contenders, nor has it filed this interpleader to aid either side of said controversy.

"IX. That defendants E. C. Clark, Grace Clark, Evan Owens and Zada Owens, have, prior to the commencement of this action, through their attorneys made similar threats of an action for damages against plaintiff if it withholds payment of said drafts.

"X. That the plaintiff cannot safely pay the same to either of the claimants of said funds named as defendants in this action without adjudication of the rights of the defendants between themselves * * *." (Emphasis supplied.)

Under the decision of State ex rel. State Bank of Townsend v. District Court, supra, and the authorities cited, plaintiff's amended complaint fails to set forth the conflicting claims of the defendants sufficiently to show that there is any reasonable or well founded basis therefor. Plaintiff's amended plead-

ing fails to set forth the claim or demand of the defendants, Clark and Owens, other than to merely state that their attorneys "made similar threats of an action for damages." See Collishaw v. American Smelting & Refining Co., 121 Mont. 196, 199, 190 Pac. (2d) 673.

That the plaintiff, Central Montana Stockyards, has been considerably more active than *a disinterested stakeholder* should be, is evidenced by the motion that it presented, and successfully prosecuted, for an order to strike certain material allegations from the answer made by the defendants, Clark and Owens, to the plaintiff's amended complaint.

Plaintiff's said motion to strike, which the trial court sustained, represented that certain of the allegations of the Clark and Owens answer were redundant, irrelevant, incompetent, immaterial and/or conclusions which are insufficient to constitute a defense to plaintiff's amended complaint.

Among the allegations, so ordered stricken on plaintiff's aforesaid motion, are the following:

"That the cattle so bought of them were the exclusive property of these Defendants [Clark and Owens]; that such sale was an independent transaction; that the obligations accruing thereby and to pay therefor, are express, primary and direct obligations of the Plaintiff Company, and that same cannot be, directly or indirectly, or at all, affected by this action;

"That the Defendants Fraser were not, nor were either of them, parties to said transaction or in any manner involved therein; that the said Defendants did not, nor did either of them, own or ever own any interest in or have any claim to said cattle, or any of these Defendants' cattle, and that said Defendants at no time owned or had any interest in said drafts or in any part thereof."

In State ex rel. State Bank of Townsend v. District Court, supra, 94 Mont. at page 559, 25 Pac. (2d) at page 399, this court said: "The main question raised, and the main issue involved, is whether the State Bank of Townsend, if all its statements in the petition as amended are true, is in the position of a

stakeholder, and this involves the question as to whether the State Bank of Townsend has incurred an independent liability to any of the parties asked to be interpleaded, and more specifically whether or not a stop payment order may be made on a cashier's check when once issued and delivered.''

The above-quoted, and also other material allegations, so stricken from the Clark and Owens answer, on motion of the plaintiff stockyards company, were properly set forth by Clark and Owens in their answer to pave the way and render admissible evidence tending to show that the Central Montana Stockyards was not a disinterested stakeholder and, also, that it had incurred an independent liability to the defendants, Clark and Owens. The allegations ordered stricken from the Clark and Owens answer go to the heart of the preliminary and primary matter required to be established at the very outset of the initial hearing, for the law is, as was recognized and stated by this court in Security State Bank of Roy v. Melchert, supra, 67 Mont. at page 542, 216 Pac. at page 343, when quoting, with approval, from 15 R.C.L. 226, viz.: '' 'An attitude of perfect disinterestedness, excluding even an indirect interest, on the part of the plaintiff is indispensable to the maintenance of the bill, and his position must be one of ''continuous impartiality,'' save that the thing in his possession be awarded to the right party'.''

Again in State ex rel. State Bank of Townsend v. District Court, supra, 94 Mont. at page 561, 25 Pac. (2d) at page 400, this court said: ''The respondents [claimants] upon the overruling of their demurrer are entitled to contest by answer the petition, and may contest the truth of the various allegations of the petition, and have decided upon its merits the right of the State Bank of Townsend to its order for interpleader.''

In Maulsby v. Scarborough, 179 Md. 67, 16 A. (2d) 897, 900, where a demurrer by plaintiff in interpleader to the answer of one of the defendant claimants was sustained, a similar circumstance to that here presented, the Maryland Court of Appeals stated: ''Included in the decree of interpleader is an order

sustaining a demurrer of the plaintiff to the appellant's answer to the bill of interpleader. We have not been referred to nor do we find any authority or precedent for a demurrer by a plaintiff to the pleadings of any of the defendants in interpleader. He must maintain a position of strict impartiality. So long as he had not bound himself to one of the defendants, it is a matter of indifference to the plaintiff what the respective contentions of the defendants are. 'His position is that of stakeholder; he has no interest in the issue and cannot be affected by the final decree in the cause.' Miller's Eq. Prac. 825; Steffey, Inc. v. American Bank Stationery Co., 161 Md. 124, 128, 155 A. 306. * * * When the bill of interpleader was sustained on the appellants' demurrer, that is where his activity in the case ended, as he had no further interest in the outcome. The plaintiff's demurrer should not have been entertained, no matter what the grounds, and the order sustaining his demurrer must be reversed."

The above-quoted decision correctly sets forth the law applicable to the situation here presented. By its motion to strike from the Clark and Owens' answer such vital allegations concerning the claim of Clark and Owens, the plaintiff stockyards corporation has failed to maintain the delicate poise and balance of a *disinterested stakeholder.*

The dissolution and discharge on the merits by this court was and is a final adjudication of all questions arising in the attachment proceedings and the parties litigant are put in the same position as if no attachment had issued. 7 C.J.S. Attachment section 470, page 634, note 82.

"Where an attachment is dissolved the lien on the property seized thereunder is vacated, and the right to hold the attached property ceases. * * * Where an attachment has been dissolved, the officer holding the property should return the same promptly." 7 C.J.S. Attachment section 472, Subd. a, notes 96, 97, Subd. b, note 4, page 636.

*Inconsistent Proceedings.* On April 5, 1955, this court's judgment then and there fully dissolved, discharged and cancelled

the attachment and orderer *"the cause remanded to the district court for further proceedings not inconsistent"* with our opinion and judgment in Fraser v. Clark and Owens, 129 Mont. 56, 282 Pac. (2d) 459, 468.

Notwithstanding the above-express prohibition against further proceedings inconsistent with this court's opinion and judgment, pronounced and effective from and after April 5, 1955, the following proceedings, wholly repugnant to and inconsistent with this court's opinion and judgment, were wilfully had and done with notice and knowledge of the opinion and judgment so pronounced, viz.:

On April 8, 1955, the sheriff of Fergus County refused to surrender to Clark and Owens, on their demand therefor, the three sight drafts, all payable to the defendants, Clark and Owens, and then in the sheriff's possession and by him held without any lawful authority.

Next, the Central Montana Stockyards stopped payment on the three sight drafts, made and issued to the payees, Clark and Owens, as owners of the calves sold and delivered by them to the stockyards corporation.

Thereafter Sterling M. Wood, counsel for R. B. Fraser and Rosabelle Fraser, who in February 1954, commenced district court action No. 19805, wherein were issued the attachments here involved and wherein it was represented, both in the district court and in the Supreme Court, that the property levied upon, seized and attached was that of the defendants, E. C. Clark and Evan Owens, suddenly abandoned such position and theory and adopted the wholly inconsistent theory that the proceeds of the sale of the calves, made by Clark and Owens on December 6, 1954, did not and do not belong to Clark and Owens but are the property of Mr. and Mrs. Fraser and, by letter bearing date of April 11, 1955, Attorney Wood threatened the stockyards corporation that unless it stopped payment of such proceeds to Clark and Owens and unless it made payment thereof to his clients the Frasers, it, the stockyards corporation, would be held liable for same. This attempt not only to circumvent

but to nullify the Supreme Court's opinion and judgment and to further withhold from Clark and Owens their property, without any lawful authority therefor, clearly was and is repugnant to and inconsistent with this court's judgment and not to be tolerated. It is quite clear that in the face of the Supreme Court's decision of April 5, 1955, the above letter of Attorney Woods ignored this court's decision and judgment and promoted a lawsuit which, if tolerated, would nullify the judgment and annihilate the authority of this tribunal as a supreme and supervisory court. See Columbia Mining Co. v. Holter, supra, and Anderson v. Border, supra.

Central Montana Stockyards, with notice and knowledge of ▮▮▮ this court's opinion and judgment, on April 12, 1955, filed in the district court of Fergus County its original complaint in interpleader in an attempt to further withhold from Clark and Owens the moneys due them by seeking an order to deposit money in the amount of the three sight drafts with the clerk of the district court for Fergus County "to be held * * * until the rights of the conflicting defendants are duly adjudicated." Thus, did the Central Montana Stockyards ignore this court's judgment and mandate and also the fact that there was then pending and undetermined, in said district court, cause of action No. 19805, wherein the rights, obligations and claims of R. B. Fraser and Rosabelle Fraser, plaintiffs, and those of the defendants, E. C. Clark and Evan Owens, were and are in issue and to be presented, tried and adjudicated. The foregoing acts, conduct and proceedings are repugnant to and inconsistent with this court's opinion and judgment and therefore not to be tolerated and void.

The order made by District Judge Stewart McConochie on ▮▮▮ April 13, 1955, allowing Central Montana Stockyards to deposit with said clerk of court "the total sum of $14,390.12 to be held by the clerk * * * until the rights of the conflicting defendants are duly adjudicated" is likewise repugnant to and inconsistent with this court's opinion and judgment of April 5, 1955. Right or wrong, the judgment heretofore pronounced

by this court must stand and it is binding upon both this court and the district court. Accordingly the district court's order of April 13, 1955, is void for in Anderson v. Border, supra [87 Mont. 4, at page 8, 285 Pac. 174, at page 176], this court held that "whether the opinion is right or wrong, it is the law · of the case, was binding upon the trial court, and is binding upon us." For like reasons and upon the same authority the restraining order issued by Judge Flachsenhar on March 12, 1956, and filed March 14, 1956, and the injunction ordered and the judgment rendered by Judge Flachsenhar on May 9, 1956, and entered on May 11, 1956, are repugnant to and inconsistent with this court's opinion and judgment and therefore void.

The order made and filed April 13, 1955, for the deposit of the total sum of the sight drafts is set aside and vacated. The restraining order issued March 12, 1956, and filed March 14, 1956, and the injunction order of May 9, 1956, and filed May 11, 1956, are set aside and vacated. The judgment of the district court rendered on May 9, 1956, and filed on May 11, 1956, is reversed and annulled. The action in interpelader commenced April 12, 1955, and thereafter prosecuted by the respondent, Central Montana Stockyards, a corporation, is dismissed and the money and funds on deposit with the clerk of the district court in such action is ordered to be delivered forthwith to the appellants, E. C. Clark and Evan Owens, or their order. It is further ordered that the appellants, E. C. Clark, Grace Clark, Evan Owens and Zada Owens, have and recover their costs, both in the district court and in the Supreme Court, from the respondent Central Montana Stockyards, a corporation. It is so ordered.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES BOTTOMLY and ANGSTMAN, concur.

MR. JUSTICE CASTLES:

I concur in the result, but not in all that is said herein.